[No. 5853.]

## SAXTON ET AL. V. PERRY ET AL.

1. **Trials—Motion by Both Parties for a Directed Verdict—Effect**—When, upon trial before a jury, each of the parties moves for a directed verdict, not requesting the submission of any fact to the jury, the decision of the court has the effect of a general finding in favor of the successful party. The evidence being in conflict, the finding will not be disturbed.—(268)

2. **Mining Locations — Authority of the State —** The state legislature may add to the general requirements of the federal statutes regulating mining locations, regulations not conflicting with the federal statute. The provisions of the state statute requiring the posting of a notice of discovery upon the claim, and the erection of boundary stakes at the angles of a placer, sustained. Nothing in the latter provision conflicts with sec. 2331 of the Revised Statutes of the United States.—(269, 270)

3. ——**Statutory Requirements**—The location of a placer in the public domain must, under Mills' Stats., sec. 3136 (Rev. Stats., sec. 4205) mark the boundaries of his claim by a stake at each angle, although the location be made upon surveyed lands, and according to the subdivisions of a public survey.—(272)

4. ——**Invalid—Effect**—The attempted location of a mining claim in the public domain, one of the essential requirements of the statute not being observed, e. g., the marking of the boundaries, does not confer constructive possession upon the locator. Neither do improvements made under such invalid location. The possession being vacant in fact, a subsequent valid location will be preferred.—(276, 277)

*Appeal from El Paso District Court*—Hon. LOUIS W. CUNNINGHAM, Judge.

Mr. P. J. DUGAN, and Mr. G. C. WELLS, for appellants.

Messrs. WARD & WARD, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The plaintiffs below, A. W. Perry and others, claiming to be the owners of the Nevada placer min-

ing claim, embracing the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, the E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$, and the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, Section 12, Township 12 South, Range 62 West, in El Paso county, Colorado, brought an adverse suit in the district court of El Paso county against C. B. Saxton and others, claiming to be the owners of the Wells placer mining claim, and applying for a patent thereto, covering the identical ground embraced in the Nevada placer. The plaintiffs had judgment upon a directed verdict, and the defendants bring the case here for review.

It is admitted that the defendants have the prior location and must prevail, if their location is valid. At the close of the testimony both parties moved for an instructed verdict. The motion of the defendants is based on these grounds:

(1) "That under the laws of the United States there is no requirement that placer claims located according to legal subdivisions on the surveyed lands of the United States shall be staked at the angles of the claim, or otherwise; but on the contrary, by the laws of the United States it is made permissible to locate placer claims upon the surveyed public lands by legal subdivisions, without reference to monuments or boundaries.

(2) "Because there is no statute of the State of Colorado, where placer claims are located by legal subdivisions on the surveyed lands of the United States, requiring the same to be staked, and any statute of the State of Colorado which purports to require staking at the angles of a placer claim, which has been located upon the public lands of the United States which have been surveyed, is absolutely null and void, because in contravention of the federal statute.

(3) "Because on the 14th day of January, 1903, the defendant, C. B. Saxton, in his own behalf, and

on behalf of his associates, and prior to said date, discovered a deposit of fire clay on the land in dispute, and on said 14th day of January, 1903, on his own behalf and in behalf of his associates, took the initial steps required by law to locate the land in controversy as a placer claim by its legal subdivisions, and that thereafter, on the 17th day of January, 1903, said location so initiated was completed by the filing of a certificate of location in the recorder's office of El Paso County, Colorado, whereby said land was completely segregated from the public domain and constituted a valid and binding location of the Wells Placer.

(4) "Because the acts done by the defendant Saxton and his associates here in evidence, were done long prior, to-wit: more than one year, to the attempted location of the so-called Nevada placer claim, wherefore the alleged location of the Nevada placer is absolutely void."

Mr. McAllister:

"I understood you to say, in introducing this subject, that it is conceded by you that should this court hold that the marking of the boundaries, or corners, or angles of a placer mining claim located on surveyed lands is necessary under the laws of the State of Colorado or the United States, then that the result of that conclusion must necessarily be that the court will instruct the jury directing a verdict for the plaintiffs instead of directing a verdict for the defendants."

Judge Dixon:

"I said this: That if the court does not sustain my motion, he will necessarily direct a verdict for the plaintiffs; of course your phraseology does not suit me exactly; I will argue that matter and you will have full opportunity to respond. I will say this: There is no doubt that if he overrules my motion,

he must necessarily direct a verdict for your clients; that is my opinion of it."

This is the motion of the plaintiffs:

"Plaintiffs now move the court to direct the jury to return a verdict in their favor, finding the issues joined in favor of the plaintiffs, and that they are the owners and have established their right to the possession and occupancy of the premises described and claimed in this section, to-wit: The Nevada Placer Mining Claim, embracing the northwest quarter of the southeast quarter, the east half of the southwest quarter, and the southeast quarter of the northwest quarter, all in section 12, township 12 south of range 62 west of the 6th Principal Meridian, by virtue of a full compliance with the statutes of the United States and of the State of Colorado, in reference to the discovery, location and holding of placer mining claims; and for grounds of this motion plaintiffs allege:

(1) "That under the undisputed evidence in this case it appears that the plaintiffs are the owners, and have established their right to the possession and occupancy of the Nevada placer mining claim, by virtue of a full compliance with the statutes of the United States and of the State of Colorado, in reference to the discovery, location and holding of placer mining claims.

(2) "Because it appears that the so-called Wells placer mining claim, claimed by the defendants, is invalid, of no effect and void.

(3) "Because it appears from the evidence that the exterior boundaries, corners or angles of the said Wells placer mining claim were never marked by the locators thereof with substantial posts, or in any manner, so that the boundaries of said claim could be readily or otherwise traced, as required by the statutes of the United States and of the State of Colorado."

The motion of defendants was denied and that of plaintiffs allowed. The jury was instructed to return a verdict for the latter, finding the issues against the defendants and for the plaintiffs, which was done.

The motions were argued and submitted together. Upon the ruling of the court, directing a verdict for plaintiffs, the defendants made no request for a submission of any fact question to the jury. It is contended that, upon these motions, the whole case was submitted to the court for final determination, both upon the facts and the law, as if a jury had been waived.

There are for consideration, upon the record as made, these main questions:

First. Was the interposition of the motions by the respective parties for a directed verdict, upon the proofs adduced and the admission of counsel; as above shown, a submission of the whole case for determination by the court upon the facts and law, since no request was made by defendants, after the court's ruling, for a jury finding on any question of fact?

Second. Under the statutes of the United States or of the state of Colorado, is it necessary, in order to a valid location, that the corners or angles of a placer mining claim located on surveyed land be marked by monuments?

Third. If the statute of the state of Colorado requires such marking, is it in conflict with the federal law upon this subject?

That these motions were intended to and did submit the whole controversy to the court for a final judgment, on the question of the necessity of staking a placer claim at its corners or angles, where located on surveyed land, seems too clear for discussion. The motion of defendants in connection with the

statement of their counsel, was in effect an admission that its claim was not staked, or that in any event they did not rely upon that fact, coupled with the request that the court pass upon the question as to whether staking was necessary; also upon the further contention that, if the state statute contemplates staking, under the circumstances here disclosed, such requirement is in conflict with the federal law.

Upon the record the question as to whether the Wells placer was staked was abandoned, for it appears therefrom that counsel for defendants repeatedly disclaimed any purpose to rely upon the fact that it was staked, but submitted the case solely upon the theory that, the location thereof being on surveyed land, staking was unnecessary. Beside, as matter of law, where, at the close of the testimony, each party moves for a directed verdict and neither party, after a ruling on such motions, requests the submission of any fact question to the jury, the decision of the court has the effect of a general verdict, and is a finding upon all fact questions, in favor of the successful party. This proposition is practically of universal recognition.

In the case of *Michigan Home Colony v. Tabor*, 141 Fed. 332, that court, speaking through United States Circuit Judge Adams upon this proposition, said this:

"The rule is firmly established that when each party to a cause on trial before a jury requests a peremptory instruction in his favor, he thereby consents that the court shall find the facts on the issues joined. The law impresses upon the finding so made all the incidents of a general finding by the court in a case submitted to it after waiver of a jury by the parties. In such case the appellate court does not consider the weight of evidence. The only questions for review, beside the sufficiency of the pleadings to

support the judgment, are whether there is any substantial evidence to support the finding and whether there was reversible error committed in the admission or rejection of evidence."

This principle is supported by a mass of cases, both from the federal and state courts, from among which we cite the following: *Sundling v. Willey,* 103 N. W. 38; *Beuttell v. Magone,* 157 U. S. 154; *Yankton Fire Ins. Co. v. Fremont, E. & M. V. R. Co.,* 7 So. Dak. 428; *Sigua Iron Co. v. Brown,* 171 N. Y. 489; *Adams v. Roscoe Lumber Co.,* 159 N. Y. 177; *Smith v. Weston,* 159 N. Y. 194; *Phoenix Ins. Co. v. Kerr,* 66 L. R. A. 569, and cases cited.

No testimony was excluded by the court which, if admitted, could have in any wise helped the cause of the defendants. The only matter complained of on this score is that the court refused to allow the witness Saxton to testify as to his intention to adopt certain old stakes, claimed to have been left upon the ground from a former location thereof, as a staking of the Wells placer. The essential facts as to such stakes were fully disclosed by the testimony. The question of the intention to adopt them was a mere conclusion, and even had the witness been permitted to have stated that such was his intention, it could not have materially aided the court to reach a finding. In any event, as we have already seen, that question has been distinctly abandoned. Even were this not so, upon the question of the ground being staked the proofs were in conflict, the weight thereof tending strongly to show that there was in fact no staking of the Wells placer, by adoption or otherwise. The court, by directing a verdict, as it might do, on the motions submitted, found this issue for plaintiffs, and it should not now be disturbed.

Upon the second proposition, it should be first noted that the authority of the state to add to the

very general location requirements of the federal statutes, with reference to the location of mining claims, where such provisions do not conflict with federal law, is undoubted. The authority is found, by irresistible inference, in secs. 2322 and 2324 of the Revised Statutes of the United States, and has never been questioned anywhere.—*Del. Monte Co. v. Last Chance Co.*, 171 U. S. 67; *Belk v. Meagher,* 104 U. S. 279; *Sweet v. Webber,* 7 Colo. 443.

When a discovery has been made within the limits of the claim sought to be taken, all that the federal statutes further require is that the location be distinctly marked on the ground so that the boundaries may be readily traced, and that the record of the location shall contain the name or names of the locators, the date of location, and such a description of the claim or claims, by reference to some natural object or permanent monuments, as will identify the claim. It will be observed how meager these requirements are and how essential to have them supplemented by state law or local rules. The federal statute calls for no discovery notice, either upon a lode or placer claim. In the absence of state statute, or local regulation, containing additional requirements upon the subject, if the fact that the location is on surveyed land is a compliance with the federal provisions that the location be distinctly marked on the ground so its boundaries may be readily traced, and therefore no placer stakes are necessary, it follows then that, where a placer is located on such land it may be done simply by filing a location certificate in the office of the county clerk in which the claim is situated, containing the data required by the federal law; there need be no discovery notice on the claim or monuments at its angles, nothing but a mere reference to legal subdivisions by means of the recorded certificate. Reliance may be had on that alone to

identify the claim. That this affords no sufficient data to a prospector to ascertain what lands are claimed by others as placer ground, is too apparent to need comment. Under such circumstances there is no actual notice whatever. The record of such location could be discovered, if at all, only with the utmost difficulty and research in the recording office. We cannot believe that such a condition was ever contemplated or intended by any authority.

While we are of the opinion that good practice and sound reason make necessary the staking at its corners of a placer location on surveyed ground, even under the federal statutes, still we do not have to decide that point. The question here is whether under the state law such staking is necessary. Our statute, which is sec. 3136 of Mills', reads as follows:

"The discoverer of a placer claim shall, within thirty days from the date of discovery, record his claim in the office of the recorder of the county in which said claim is situated, by a location certificate which shall contain: First, the name of the claim, designating it as a placer claim; Second, the name of the locator; Third, the date of location; Fourth, the number of acres or feet claimed; and Fifth, a description of the claim by such reference to natural objects or permanent monuments as shall identify the claim. Before filing such location certificate the discoverer shall locate his claim: First, by posting upon such claim a plain sign or notice containing the name of the claim, the name of the locator, the date of discovery and the number of acres or feet claimed; Second, by marking the surface boundaries with substantial posts sunk into the ground, to-wit: one at each angle of the claim."

This language is so plain and clear that it needs no construction. It contains no exception. It says

the discoverer of a placer claim, in order to complete a location, shall do certain things. If it were intended that, in case the claim were located on surveyed ground, he should be exempt from so doing, the statute would have said so. The law was intended to, and does, apply to placer claims, whether located on surveyed or unsurveyed government lands. To hold otherwise would be in effect to repeal the statute, and that is not a function of courts. It is the province of courts to uphold statutes wherever possible, and give them effect and meaning according to their plain terms.

It is argued by counsel that the equities of the case are with the defendants, and that a ruling should be made that will protect those rights. There is no question of equity here. The question is whether the clear, unequivocal provisions of the statute are to be complied with. The defendants are presumed to know of the existence of the statute, and it is wholly through their failure to comply with its terms that they find themselves in their present plight. In speaking to this point, through Mr. Justice Brewer, the supreme court of the United States, in the case of *Del Monte Mining Co. v. Last Chance Mining Co., supra,* had this to say:

"The question in the courts is not what is equity, but what saith the statute? Thus, for instance, there is no inherent necessity that the end lines of a miner's claim should be parallel, yet the statute has so specifically prescribed, and it is not within the province of the court to ignore such provisions."

If the statute does not meet with approval, relief may be had only through the law-making power. The courts have no more authority to legislate upon this than any other subject. We do not, however, hesitate to express an approval of the terms of the statute; they seem reasonable and proper as a means

of giving actual notice, that certain lands are already claimed and located, to those who are engaged in prospecting thereon for mineral and other valuable deposits. If this court may arbitrarily dispense with the requirement of staking, it may with equal propriety dispense with any or all of the other requirements of the state statute on this subject, not covered by the federal laws, including that of posting a discovery notice. We conclude that these provisions must be substantially complied with in order to effect a valid location of a placer claim, though on surveyed land.

We are unable to find, and counsel have not pointed out, a decision in conflict with this ruling, where a state statute expressly requiring staking is involved. The only decisions holding a contrary view are found in states having no local statutes upon the subject, and where the federal statute alone is considered. *Kern Oil Co. v. Crawford,* 103 Cal. 299, is not authority here, for that construed the federal statute only; and this is also true of the cases from the land department.

In *White v. Lee,* 78 Cal. 593, the supreme court of that state, having under consideration only the requirements of the federal statutes in this behalf, held the staking of placer claims to be necessary, though located on surveyed land. Speaking to this point, in that case, the following pertinent language was used:

"The construction contended for does not seem to us to be in harmony with the original purpose of the act. The purpose of the requirement, that the claimant shall mark the boundaries of his claim, is to inform other miners as to what portion of the ground is already occupied. The men for whose information the boundaries are required to be marked wander over the mountains with a very small outfit. They

(18)

do not take surveyors with them to ascertain where the section lines run, and ordinarily it would do them no good to be informed that the quarter-section of some particular number had been taken up. They would derive no more information from it than they would from a description by metes and bounds, such as would be sufficient in a deed. For the information of these men it is required that the location shall be 'distinctly marked upon the ground.' The section lines may not have been distinctly marked upon the ground, or the marks may have been obliterated by time or accident. And to say that a mere reference to the legal subdivisions is of itself sufficient would in our opinion defeat the purpose of the requirement. We think we are justified in the conclusion that placer locations must be marked on the ground with the same care, and the same object and purpose, as in the case of lode locations."

This view has the support of other courts of final resort, and also of eminent text-book writers, . notably these: *Worthen v. Sidway*, 72 Ark. 215; Lindley on Mines (2d ed.), § 454; Snyder on Mines, § 388; Morrison's Mining Rights (12th ed.), page 200; Morrison's Mining Rights (13th ed.), page 218.

When to those of the federal statute there is added, as in this case, the direct and positive requirement, not merely that the location must be distinctly marked upon the ground, but that the surface boundaries shall be marked with substantial posts sunk into the ground, one at each angle of the claim, there is no room to doubt the necessity of such staking.

It is proper to state that the decision in the case of *White v. Lee, supra,* was expressly overruled in the case of *Kern Oil Co. v. Crawford, supra,* but a careful examination of the opinion in the latter case shows conclusively that the question determined in

the former case was not before the court in the latter one. The ruling on that point was a gratuity, and unnecessary to a determination of the matters there before the court. In any event, the reasons given in *White v. Lee,* for requiring staking under the federal statute are logical and persuasive, and their force remains unimpaired.

The state statute in no way conflicts with the federal requirements. It is rather designed, by more definite and detailed provisions, to attain the primary object, that is, to give actual notice that the ground is already occupied, and thus warn off subsequent would-be locators. It takes nothing from the federal requirements, but simply adds to them, as has been done, and upheld, in the matter of the location of lode claims. This power is clearly with the state authority. It may not take from, but it may add to, so long as it does not contravene, the requirements of the federal law on the subject.— *Sweet v. Webber, supra.*

Sec. 2331, U. S. Rev. Stats., provides that "Where placer claims are on surveyed lands and conform to the legal subdivisions no further survey or plat shall be required," etc. Counsel for defendants contend that the state statute requiring boundary stakes at the angles of a placer claim is in conflict with this provision. This provision has no reference whatever to the marking of the boundaries of a claim when located and has no real or apparent connection with that subject. It must refer, indeed there is nothing else to which it can refer, to the plat and survey required to be filed upon application for patent. We search in vain for a federal provision which either directly or by inference dispenses with the general requirements that the boundaries of mining claims shall be marked upon the ground, hence there is no federal provision with which the Colorado

statute, expressly calling for stakes at the angles of a placer, can conflict. The contention of defendants on this score is without merit. While it is true that the boundaries of the legal subdivisions, as fixed by the official survey, control, manifestly that provision is not interfered with by the requirement of staking. The boundaries should be staked in conformity, or reasonably so, with the government lines, so that a would-be locator is put on inquiry, that being the purpose of the notice on the ground. It is essential that this always be done as a matter of common justice. If in order to fix and accurately mark the corners of the legal subdivisions, so as to give notice, the lines must be run, that duty clearly is with the original locator.

It is contended that because defendants have been in possession, under claim and color of title, as is said, to the Wells placer, any person attempting to locate the same ground was a trespasser and could initiate no valid right. The proof is undisputed that at the time the Nevada placer was located no person whomsoever was in actual possession of any part of the Wells placer. So that the most, for that particular time, the defendants could claim was constructive possession, and to make that effectual, as against one' who seeks to relocate the ground, the location, under which such claim is asserted, must be valid. As we have seen, the Wells placer location was not of this character, hence testimony of prior possession of, and work done and improvements made upon, the ground was immaterial, and could not aid the defendants. The testimony was properly rejected.

Chief Justice Waite, speaking for the United States supreme court, to this proposition, said:

"The right of possession comes only from a valid location. Consequently, if there is no location there can be no possession under it. * * * A

location is not made by taking possession alone, but by working on the ground, recording and doing whatever else is required for that purpose by the acts of congress and the local laws and regulations.''— *Belk v. Meagher, supra.*

To the same effect are *Sweet v. Webber, supra; Hopkins v. Noyes,* 4 Mont. 550.

The location of the Nevada placer being in all respects valid, and the record disclosing no error, the judgment is affirmed.                     *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.