In re IRON CLAD MFG. CO.

(Circuit Court of Appeals, Second Circuit. May 6, 1912.)

No. 210.

1. TRIAL (§ 177*)—CROSS-MOTIONS FOR DIRECTION OF VERDICT—EFFECT.

The fact that each party asks for a peremptory instruction to find in his favor does not submit the issues of fact to the court, so as to deprive either party of the right to ask other instructions, and to except to the refusal to give them, or of the right to have questions of fact submitted to the jury, where the evidence thereon is conflicting, or divergent inferences can be drawn therefrom.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*]

2. TRIAL (§ 139*)—DIRECTION OF VERDICT—POWER OF COURT.

If the evidence is of such a conclusive character that upon it as a whole the court would feel constrained to set aside a verdict, if rendered in favor of one party, it may direct a verdict in favor of the other

party, although there be conflicting evidence as to details not essential to a conclusion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

3. BANKRUPTCY (§ 95*)—INVOLUNTARY PROCEEDINGS—ISSUE OF INSOLVENCY—DIRECTION OF VERDICT.

On the trial of the issue of insolvency in involuntary proceedings against a corporation, the court was justified in directing a verdict of insolvency where, although the books showed an excess of assets over liabilities, the president of the corporation, who was also the sole stockholder, testified to errors in the books which, if corrected, would make them show an excess of liabilities, and there was no testimony to show a better financial condition than thus appeared.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 132, 140, 145; Dec. Dig. § 95.*]

In Error to the District Court of the United States for the Eastern District of New York.

In the matter of the Iron Clad Manufacturing Company, bankrupt. From an order of adjudication, the bankrupt brings error. Affirmed. See, also, 192 Fed. 318, 112 C. C. A. 94; 194 Fed. 906.

This cause comes here upon writ of error to review a judgment dated December 2, 1911, adjudging the Iron Clad Manufacturing Company to be a bankrupt. The company demanded a jury trial of the issues raised by the petition in bankruptcy, and the same came duly on for trial. The only essential issue was that of insolvency as defined by the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). After several days' trial, both sides rested, and after disposing of various motions made, the trial judge directed a verdict of insolvency against the corporation.

J. A. Allen, for plaintiff in error.
J. A. Garver, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1, 2] We find nothing in the various motions made at the close of the case to preclude the bankrupt from asking that the issues be sent to the jury. The fact that each party asks for a peremptory instruction to find in his favor does not submit the issues of fact to the court, so as to deprive either party of the right to ask other instructions, and to except to the refusal to give them, or to deprive him of the right to have questions of fact submitted to the jury, where the evidence on the issues joined is conflicting, or divergent inferences can be drawn therefrom. Buetell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654. But if the evidence is of such a conclusive character that upon it as a whole the court would feel constrained to set aside a verdict, if one were rendered in favor of one party, it may direct a verdict in favor of the other party, although there be conflicting evidence as to details not essential to a conclusion. Empire State Cattle Company v. Atchison, Topeka & Santa Fé Railroad, 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[3] In the case at bar there was some testimony introduced by the creditors as to alleged errors in the books and as to alleged excessive valuations of property. The witnesses who gave this testimony were cross-examined, and if that were all there was in the case, it might be that the bankrupt was entitled to have it sent to the jury to determine as to its evidentiary weight. But there is other testimony coming from the bankrupt itself of such a character that, in our opinion, a verdict in favor of the bankrupt, had one been rendered, should not be allowed to stand.

The bankrupt's books were produced. It is contended that they were incomplete, and that, therefore, under Bankrupt Act, § 3, subd. "d," the burden of proof of solvency rested on the alleged bankrupt. This point need not be considered.

The books produced showed on their face an excess of assets over liabilities of about $350,000. The creditors called an accountant, who testified to very many instances of error in the books, from a bookkeeper's standpoint. They also called a witness who, professing to be an expert, testified to many instances where assets were, as he said, greatly overvalued on the books. Apparently this testimony is highly persuasive; but the bankrupt was entitled to have it submitted to the jury to pass upon, if it were all there was to impeach the accuracy of the books and to sustain the allegation of insolvency. For the purposes of this appeal, therefore, it may be wholly disregarded—treated as if it had never been introduced in the case. Without it, was the trial judge warranted in directing a verdict of insolvency? We think he was, because of the testimony of Mrs. Seaman as to two errors in the books. Upon the bankrupt's own books and her testimony insolvency was clearly shown.

Mrs. Seaman was the president and treasurer of the bankrupt, and its sole stockholder. There are no minority stockholders, and she is practically herself the bankrupt. Her own testimony it does not lie within her own mouth to impeach. She testified that the bankrupt, at the time in question, owed her $200,000, and also owed the American Steel Barrel Company $300,000. Of these amounts the books showed only an indebtedness to Mrs. Seaman of $15,235.98, so that there was an excess of liabilities over those stated in the books of $474,764.02, much more than sufficient to wipe out the excess of assets over liabilities which the books showed.

The substance and effect of Mrs. Seaman's testimony was the correction of errors in the bankrupt's books by the bankrupt itself. The result was that, when both sides rested, the books thus corrected showed an excess of liabilities over assets of about $125,000, with no testimony to show that its financial condition was any better than the books, corrected by its own officer, indicated. To send the case to the jury under such circumstances, when a verdict of solvency, if rendered, would have to be set aside as against the evidence, would have been an improper proceeding. The trial judge rightly directed a verdict as he did.

If any confirmation of the conclusion that the corporation was insolvent were required, it might be found in the schedules in bank-

ruptcy filed by its attorney about a month after the decision of the District Court now under review. They show the liabilities to be very largely in excess of the assets. These schedules are no part of the record brought here by the writ of error, but were submitted at the argument by counsel for the creditors in support of a motion to dismiss the appeal upon the ground that the questions raised here had become academic, since, in the event of a reversal for any error of practice, a new trial would follow, upon which creditors could submit the schedules as sufficient proof of insolvency. It is not necessary to decide this preliminary motion, as we are satisfied that the allegation that there was error in instructing the jury to find a verdict of insolvency is unsound.

The decree is affirmed.

COXE, Circuit Judge. I concur in the result but prefer to rest the decision upon the fact that the question has now become academic. The schedules filed by the bankrupt since the decision of the district court show beyond question that the bankrupt was and is insolvent. If a new trial were granted, the result would inevitably be the same. The bankrupt cannot deny its own statements and admissions found in the papers filed by it. Courts do not sit to hear moot questions, however interesting they may be, and we have frequently held that where, for any reason, there has ceased to be a controversy between the parties, we will not listen to a discussion of the issue which previously existed.

Two of these cases arose during the present term, viz., Victor Talking Machine Co. v. American Graphophone Co., 191 Fed. 1007, decided February 6, 1912, and In re Lloyd Italiano Societa Di Navigazione, 196 Fed. 1006, 115 C. C. A. 671, decided April 8, 1912. In the latter case we said:

"It appears from the papers and was admitted at the argument that a decision of the interesting question debated, no matter how it may be decided, will in no way change the final decree entered in the District Court. The fact that the question is one which the shipping interests of this and other countries wish to have settled is unimportant. This court does not sit to hear moot questions."

The schedules filed by the bankrupt are properly before us upon a motion made prior to the argument to dismiss the appeal.