## No. 11,900.

### PARKER *v.* PLYMPTON.

Decided December 24, 1928.  Rehearing denied January 14, 1929.

Mr. WILLIAM E. HUTTON, Mr. JOHN F. PIERCE, Messrs. CHINN & STRICKLER, for plaintiff in error.

Messrs. STRACHAN & HORN, Mr. L. LESLIE MILES, for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

ANNA Plympton, defendant in error, is the widow of Hercules Plympton, deceased. She recovered judgment on a directed verdict against Paul Parker and John M. Beckman, on the account of the death of her husband, caused by the negligence of defendants. Parker brings the case here to obtain a reversal, but Beckman has not come to this court. When not otherwise designated, we shall refer to the parties as aligned at the trial, Mrs. Plympton as plaintiff and Parker as defendant.

Hercules Plympton was a passenger in the rear seat of an automobile driven by defendant Beckman. Parker, the other defendant, owned and drove another car. The cars collided at the intersection of two streets in Colorado Springs, and the Beckman car was overturned. As a result, Plympton received injuries from which he died a few days later. It was the same collision in which one Ullom was killed, by reason of which his widow recovered judgment against the same defendants, reported in *Parker v. Ullom,* 84 Colo. 433, 271 Pac. 187, opinion by Mr. Justice Butler. Both cases were tried at the same term of court, and before the same trial judge. The same attorneys appear in both cases. The record in each case shows that the defendant Parker admitted his negligence, before either suit was brought. This fact was not mentioned in our opinion in the Ullom case. It was affirmed on other grounds, but it is a fact of importance, especially here. Because of such admission, and because the same acts of negligence gave rise to both causes, details that otherwise might be stated, will be omitted.

The evidence concerning defendant's admission of negligence appears from the testimony of Thomas L. Reasoner, a witness for plaintiff, and from defendant's cross-examination. Reasoner was a juror at a coroner's inquest over the body of Hercules Plympton, deceased. Reasoner testified to effect that he had had a conversation with Parker shortly after the inquest; that he (Reasoner) made the statement that the coroner's jury brought in a verdict against both of them (meaning Parker and Beckman), on account of Parker's own statement of the speed that he was maintaining, also that he had gone on the highway with the vision obstructed. The witness further said that Parker made the statement that he thought he was driving "excessive," that he could not see to the left, and that he was perfectly satisfied with the verdict of the coroner's jury. At the trial in this case, Parker testified that he "might have said" that he was negligent or careless but "did not think" he was careless, but he also said (found in another place in the record), that he "did not think" he said that which Reasoner declared he (Parker) said.

Plaintiff's proof of damages shows that she is the widow of deceased; that decedent was an able bodied man, forty years of age, in good health, a laborer working for the Denver and Rio Grande Railroad at ninety dollars per month. He left surviving him, his widow, and three small children, aged twelve, eleven and six, respectively. At the time of the trial, the widow was working in a laundry, and two of the children were with relatives. This evidence was uncontradicted.

1. First, as to defendant's negligence: His culpability appears conclusively from the evidence. Reasoner's testimony, above referred to, is positive and unequivocal, and defendant admits that "he might have said it." This is enough. We do not consider the force of the admission weakened by his statement in another place, that he "did not think" he said it. It merely showed evasion, and at best, from his own standpoint, an attempt to weaken his

previous admission by further lack of positiveness, but Reasoner was positive and convincing. We remark on the appalling consequences of the collision, the death of two men. Defendant's admissions were made after the coroner's inquest, and after he had had time to think the matter over. In a matter of such grim fatality, and after time for reflection, it is incredible that he should not know whether he said it or not. His failure to deny, when pressed for an answer, was equivalent to an admission. If the case had gone to the jury, and if they had found him guiltless in the face of his half-hearted, but nevertheless convincing admissions, we should unhesitatingly direct that the verdict be set aside. The verdict in *Parker v. Ullom, supra,* is of course not binding on him here, but we refer to it as an additional corroboration, whether required or not, that his acts were such that the judgment of men cannot reasonably differ as to the fact of his negligence. The details of such negligence were related by other witnesses for plaintiff. The evidence is such that it is impossible to see how any reasonable man could doubt defendant's guilt, or reach a different conclusion. Defendant's admission was not overshadowed in the slightest by the evidence of his other witnesses, even if it should be conceded that an attempt thereat was allowable.

Speaking of directed verdicts in *Neal v. Wilson County Bank,* 83 Colo. 118, 122, 263 Pac. 18, we said: "It may be the duty of the court to take such a step, and it was so here. The facts in this case were such that reasonable men could draw but one inference from them. It became a matter of law for the court." The same language is applicable to this case.

2. As to damage: Defendant assigns error on the ground that "The verdict is unsustained by any evidence of actual pecuniary damage to defendant in error." We have stated above the material parts of the evidence as to the domestic relations of deceased. In support of the above assignment, defendant's counsel urge that the evi-

dence does not show how much of Hercules Plympton's wages, if any, he contributed to the support of his family, but if he gave them nothing, he could have been compelled to support them if he were alive, but now the family's future sustenance from his wages is gone forever. It does not require the calculation of a jury to determine how long ninety dollars per month for a wife and three small children would last, if the full amount had been brought home. Under the table in section 6537, C. L. 1921, deceased had an expectation of 28.18 years more of life. We think that the statutory limitation of five thousand dollars was not too much. The evidence of plaintiff's damage was ample, and being uncontradicted, it became a matter of law for the court.

3. Plaintiff and defendant each moved for a directed verdict. The court thereupon took the case from the jury, and directed judgment for plaintiff. Was this reversible error? We give the answer in the language of the last eight decisions of this court on the point.

In *McGhee Inv. Co. v. Kirsher,* 71 Colo. 137, 139, 204 Pac. 891, we said: "The next contention is stated as follows: 'In any event there were certain clear cut questions of fact for the determination of the jury.'

"The conflict in the evidence was upon immaterial matters, but if the situation were otherwise, which may be assumed, there was no error of which plaintiff can complain. Both parties moved for a directed verdict, and neither can now insist, that the case should have gone to the jury."

*Cascade Auto Co. v. Petter,* 72 Colo. 570, 572, 212 Pac. 823: "A request by each party for a directed verdict is equivalent to a stipulation that the facts may be found by the court. The court's finding, thereupon made, is conclusive if there is evidence to support it."

*Boldt v. Motor Securities Co.,* 74 Colo. 55, 56, 218 Pac. 743: "Defendant complains because certain questions were not submitted to the jury. His own motion for a directed verdict, added to that of plaintiff, disposes of

this objection. They constitute a waiver of his right to go to the jury on the facts.''

*Commonwealth Casualty Insurance Co. v. Kuhrt,* 75 Colo. 175, 177, 225 Pac. 251: ''Both sides moved for a directed verdict. The court sustained the motion of the plaintiff, and held that an oral contract had been established by the evidence, and directed a verdict for plaintiff in the sum of $5,000. Such finding has the effect of a general verdict.''

*Catlin v. Moynihan,* 76 Colo. 164, 230 Pac. 1114: ''We said, in *Auto Co. v. Petter,* 72 Colo. 570, 212 Pac. 823, that 'a request by each party for a directed verdict is equivalent to a stipulation that the facts may be found by the court. The court's finding, thereupon made, is conclusive if there is evidence to support it.' There was some conflict in the testimony, but there was abundant evidence to justify the finding in favor of plaintiff below.''

*Butts v. Sauve,* 79 Colo. 317, 318, 245 Pac. 713: ''At the close of the evidence both sides moved for a directed verdict, which, under our decisions, left the case to the court.''

*McLagan v. Granato,* 80 Colo. 412, 415, 252 Pac. 348: ''Each side moved for a directed verdict. We have several times held that this amounted to a submission of the case to the court (*Butts v. Sauve,* 79 Colo. 317, 245 Pac. 713; *McGhee Inv. Co. v. Kirsher,* 71 Colo. 137, 204 Pac. 891), and so it is now claimed that the verdict and the judgment thereon are invalid, but, since both sides went to the jury without objection on this score, we think neither has ground to complain.''

*Watkins v. Security Benefit Ass'n.,* 81 Colo. 66, 68, 255 Pac. 452, contains a good summary of the foregoing in the following language: ''It is settled in this jurisdiction that the effect of the motions by plaintiff and defendant [for a directed verdict] was a submission of the cause to the court.''

Surely, language could not be made plainer 'than in the above opinions. Nevertheless, counsel for defendant argue a proposition that we quote from the words of their opening brief, as follows: ''The defendant, Parker, contends as already set forth in this brief, that he was entitled under the law and the evidence to a directed verdict in his favor; but if it should be decided that he was not so entitled, then certainly he was at least entitled to a submission of the issues of fact to a jury.''

The question now is, was the defendant entitled to a submission of the issues of fact to the jury? The situation will be better understood by a further brief reference to the facts. At the close of the testimony, plaintiff and defendants severally moved for a directed verdict. The trial judge thereupon indicated to counsel that the legal effect of these motions from both sides, was to submit the cause to the court for determination, but counsel for defendant Parker argued that if the court should overrule his motion, he still had the right to a submission of the issues of the case to the jury, and that he was making the motion with this reservation. The court answered ''no'' to this, and inquired if defendant wished to withdraw the motion with the qualifications indicated. Defendant's counsel answered that he did, but continued to argue the point. The court then declined to allow defendant to withdraw his motion for a directed verdict, and proceeded to overrule such motion. Counsel for defendant Parker then made the following request, *ore tenus*:

''May I ask at this time, on behalf of the defendant Parker, that the Court submit to the jury in this case the issue as to whether or not the defendant Parker was guilty of negligence proximately causing the death of the decedent, Hercules Plympton, and also that the Court submit to the jury for its determination the issue as to whether or not, either by virtue of independent negligence on the part of Plympton himself, as one of those riding in the Beckman car, or by virtue of the existence

of a joint enterprise in which they were all principals and agents of each other, the decedent Plympton was guilty of contributory negligence; and further, that the Court submit to the jury, if your Honor please, the issue as to whether or not the plaintiff in this case has been damaged under the evidence to the extent that is claimed by her.

"The Court: The request is denied.

"Mr. Hutton: "Save my exception."

The above quotation contains all of the issues of fact in the case from defendant's standpoint, some of which were disputed issues, and others not, which we mention hereafter. After the above request was denied, the court found that decedent Plympton was not guilty of contributory negligence, and directed a verdict for plaintiff in the sum of five thousand dollars. Judgment was accordingly entered.

4. Concerning defendant's right to a jury trial, and waiver thereof: As applied to this case, it is wholly a question of our local practice and procedure, and is covered by our Code of Civil Procedure, and our rules, as announced in the above decisions.

"Under our Constitution, trial by jury in a civil action or proceeding is not a matter of right, but our general assembly may provide for it." *Kahm v. People,* 83 Colo. 300, 303, 264 Pac. 718; *Miller v. O'Brien,* 75 Colo. 117, 118, 223 Pac. 1088; *Londoner v. People,* 15 Colo. 557, 570, 26 Pac. 135; *Corthell v. Mead,* 19 Colo. 386, 388, 35 Pac. 741.

The legislature has provided for jury trials in certain cases. Section 191 of the Colorado Code of Civil Procedure provides that "In actions for * * * injuries, an issue of fact must be tried by a jury, unless a jury trial is waived or a reference is ordered as provided in this Code." And, since the general assembly may provide for a trial by jury in civil cases, it may also provide how such trials may be waived. It has done so. Session Laws 1887, page 153, § 178, Code of Civil Procedure, 1921,

section 196, reads: "Trial by jury may be waived by the several parties to an issue of fact, with the assent of the court, in the following manner: First—By failing to appear at the trial. Second—By written consent, in person or by attorney, filed with the clerk. Third—By oral consent, in open court, entered in the minutes. The court may prescribe, by rule, what shall be deemed a waiver in other cases."

It is the last sentence in the above section 196 that is applicable to the rule of waiver in the present case. The rule prescribed, pursuant to authority, is stated in the excerpts from the eight opinions above quoted.

By a later legislative enactment, not repealing the above, but bearing further on the rule making power of the courts, Session Laws 1913, page 447, § 1, Code of Civil Procedure, 1921, section 444, it is provided: "The supreme court shall prescribe rules of practice and procedure in all courts of record and may change or rescind the same. Such rules shall supersede any statute in conflict therewith. Inferior courts of record may adopt rules not in conflict with such rules or with statute."

The last two sections quoted are legislative recognition of the inherent power of the court to make rules of practice and procedure, without which the court could not adequately function. Many of our rules of practice and procedure are printed in a separate book, appropriately labelled, and distributed free to the attorneys practicing before this court. But a vast number of such rules are contained in the printed reports of our decisions, promulgated as justice demanded, and when the occasion therefor arose. Manifestly they are too numerous to make it possible to put them all in one book, but they are as binding as if they were all contained between two covers, and there should be no misunderstanding as to the meaning of the one stated as often as this has been.

5. Prior to the determination of the cases reported in the above eight opinions, there are three others on which we shall now offer comment. They are *Nisbet v. Siegel-*

*Campion Co.,* 21 Colo. App. 494, 516, 123 Pac. 110; *Saxton v. Perry,* 47 Colo. 263, 267, 268, 107 Pac. 281; *O'Brien v. Galley-Stockton Co.,* 65 Colo. 70, 72, 173 Pac. 544. They are relied upon by defendant. We quote from page 72 of the O'Brien case, supra: "Since both parties, at the close of the testimony, moved for a directed verdict, and neither of them, after a ruling on such motions, requested the submission of any question of fact to the jury, the decision of the trial court has the effect of a general verdict."

Language similar to the above will be found in the two other early cases above, but it is omitted from our last eight decisions. It thus not only affirmatively appears from the above three earlier opinions on which defendant relies, but also from the records therein, which we have recently examined, that no request was made on either side to submit questions of fact to the jury. And so, whatever views the court may have then entertained if such request had been made, is neither here nor there. Merely incidental remarks of the court on questions not before it for determination, are not to be taken as precedents. *Young v. People,* 54 Colo. 293, 307, 130 Pac. 1011. And where decisions are conflicting, the latest govern. *Baker v. Sockwell,* 80 Colo. 309, 315, 251 Pac. 543. On the other hand, counsel for defendant point out, and rightly, that in the first eight cases mentioned, it does not appear that any fact question was offered for submission to the jury after the ruling on motions for directed verdict, or before. It may therefore be true that the idea of submitting all questions of fact to the court, and reserving them all for the jury (we comment on this anomaly later), is a novelty in this state, or at least it has not been argued before as ably as here. We have decided, however, in *London Guarantee & Accident Co. v. Officer,* 78 Colo. 441, 445, 242 Pac. 989, that "The submission of special interrogatories rests in the sound discretion of the court." We repeat it, with the statement that the court did not abuse its discretion, and that under

the facts here presented, it would have been an abuse of discretion to have granted it.

6. An accurate portrayal of our views is found in the following quotation from *Saxton v. Perry, supra,* at page 268 of the opinion:

"In the case of *Michigan Home Colony v. Tabor,* 141 Fed. 332, that court, speaking through United States Circuit Judge Adams upon this proposition, said this:

" 'The rule is firmly established that when each party to a cause on trial before a jury requests a peremptory instruction in his favor, he thereby consents that the court shall find the facts on the issues joined. The law impresses upon the finding so made all the incidents of a general finding by the court in a case submitted to it after waiver of a jury by the parties. In such case the appellate court does not consider the weight of evidence. The only questions for review, beside the sufficiency of the pleadings to support the judgment, are whether there is any substantial evidence to support the finding and whether there was reversible error committed in the admission or rejection of evidence.'

"This principle is supported by a mass of cases, both from the federal and state courts, from among which we cite the following:" (Citing many cases.)

We have not departed from the application of the above principles in any case where they were involved, since the rule was first announced in *Saxton v. Perry, supra,* eighteen years ago. We will not abandon them now. Particularly in our last eight opinions above referred to, no reference will be found to the feature on which counsel for defendant here relies, but to which we are unable to agree. We are not passing on federal rules of practice, except to the extent that we have made them our own by adoption. Subsequent changes by those courts, or different applications of their own rules are their own concern. Our attitude of deference toward the rules of practice in other jurisdictions, is set forth with more particularity in the twelfth paragraph of this opin-

ion. The incidental remarks in *Saxton v. Perry* about more fact questions for the jury after the case has been submitted to the court, are not supported by the quotation from the federal case on the same page of the opinion in *Saxton v. Perry,* nor are they germane to either case. An exhaustive review of the other cases there cited would be an unnecessary duplication of our work. We feel that we have done enough in re-expressing our positive convictions in regard to our own rules, and assembling them here in one opinion for future guidance.

7. Mathematically, counsel for defendant is wrong. The whole is equal to the sum of its parts. Counsel's motion for a directed verdict was directed to what? This point is touched on lightly in the argument, if not altogether ignored. It was a motion for a directed general verdict on the general issues, sometimes called the "case at large." It was all embracing as to all material facts, which the court was required to weigh and consider in passing on the motion. Counsel for defendant based his motion *on the evidence,* and stated much of it at length. There was nothing left. The motions of both parties were equivalent to a stipulation that the evidence was undisputed, or at least that it was so clear and convincing that reasonable men could draw only one inference from it, so that it thereby became a matter of law for the court. The "sum of its parts" consists of precisely the same things that the defendant's counsel would have us suppose they reserved for the consideration of the jury. In other words, if their argument is to be adopted, we must hold that they submitted the entire case to the court and reserved the entire case for the jury. But this is offensive to one's intelligence. It is barely possible that defendant's advocates may have become unnecessarily confused, unconsciously, no doubt, over a matter of fractions. It is understandable, for instance, how the parties might definitely agree to submit, say one out of four fact questions to the court, and have three left, but this is not such a case, and it is not demonstrable to us that they

may submit four out of four to the court, and have four, or any number, left for the jury.

8. It is contended that defendant's counsel did not intend to submit the whole case to the court. Granting for the sake of the argument that they did not so intend, the only alternative is a worse intention, namely, to file an experimental or will-o'-the-wisp motion, that is, to trifle with the court, after giving the trial judge their confidence by proffering all the facts to him for determination, and when not suited with his decision, to withdraw the motion, demand a retraction of the court's ruling on penalty of having the case reversed, and confidently submit the same issues to the jury in the hope of a more fortunate outcome. They cannot thus usurp the prerogatives of the court. Such gestures are incompatible with the solemnity of judicial forums, where substantial justice must be done, nor can plaintiff's rights be made a mere pawn in a game. To make it plainer, if possible, defendant cannot file a motion that shall stand only while it burns plaintiff, but that may be withdrawn the minute it becomes apparent that it may scorch its author. Such practice would render judicial proceedings farcical.

9. It was not error to refuse defendant the right to withdraw his motion for an instructed verdict. At the trial, one of his counsel stated that he wished to withdraw it, but continued to argue the point. His actions spoke louder than words. They speak louder even now in his first assignment of error, "That the trial court erred in denying defendant Parker's motion for a directed verdict in his favor, made at the close of all of the evidence in the case." This is argued in the briefs as a ground for reversal. It is noteworthy that defendant complains because the court did not pass favorably on his motion for a directed verdict, and also because he was not allowed to withdraw it. Plainly, they are inconsistent. The court could not have done both. Counsel's persistence in two courts in an effort to uphold his motion, is

not a withdrawal, nor is it an attempt to withdraw. It is holding fast to it. Whether or not permission to withdraw a motion may be said to rest generally in the sound discretion of the court, it cannot be done as a matter of right when it works an injury to the opposite party, or disrupts procedure, or where it amounts to an imposition on the court to grant it. In the present case, it was the duty of the court to let the motion stand with all its consequences.

10. Considering the matter from the standpoint of a stipulation (the language used in *Cascade Auto Co. v. Petter, supra*): Counsel for defendant insist that it was not a stipulation in the present case because of their "reservations," but we do not permit reservations to our rules without our consent. Changes therein, addenda or amendments thereto, if any, must be made by this court. All we have done is to erase and treat as surplusage counsel's interlineations, not found in such rule. The rule is a privilege. It was optional with the parties to invoke it, but having done so, they did it at their peril, plaintiff and defendant alike, and they must take it as it stands, unless the parties mutually agree to waive its effect, with the sanction of the court. But here, the plaintiff did not relinquish her claim to the full force of the rule, and the court, very properly, did not abrogate it. The only instance we find in our reports where it was avoided, was by consent. This will be found in *McLagan v. Granato, supra,* opinion by Mr. Justice Denison. There, after each side moved for a directed verdict, and the motions were denied, they both went to the jury without objection, and it was naturally held that neither had ground to complain.

11. The judgment is right for another reason: As we have shown, the questions of Parker's negligence and defendant's damage were not jury questions under the facts of the case. Contributory negligence by Hercules Plympton, who rode on the back seat of one of the wrecked automobiles, was pleaded but not proven. The

question of a joint enterprise, has been fully disposed of adversely to the contention of Parker's counsel in *Parker v. Ullom, supra.* The law of that case is the law here on this point. All these things beggar defendant's plea concerning the facts that he wanted the jury to pass upon, in any event. And aside from all technicalities, none of which are favorable to defendant, the merits of the case must not be lost sight of, the fact that plaintiff has been widowed by defendant's negligence, and her three small children made fatherless. This is the prodigious feature of the case.

12. Numerous decisions from other jurisdictions are cited, but in none of them are the essential circumstances on which the motions were based, like the ones now before us. Our attention is not called to any case where the defendant admitted negligence, did not rebut proof of injury and damage, and after all facts had been submitted to the court by acts amounting to a stipulation, asked to have it reversed because the court pronounced judgment.

As to decisions in other jurisdictions, we further remark, that while we profoundly respect the decisions of other courts, matters of practice and procedure are almost universally governed by the law of the forum. This is so even when the substantive laws of different states are involved, and is decidedly so when the whole matter, substantive and procedural, lies within our own boundaries. This rule of comity is made imperative by the divergent rules, codes and statutes of different jurisdictions. To illustrate: An Act of Congress, U. S. Rev. Stats. sections 648 and 649, refers to jury trials in United States Circuit Courts, and how the right may be waived. How long the law remained in force is unimportant. Now, the Federal Judicial Code affords further opportunity for study. So as to the several states. But the point is that as to practice and procedure, they are separate and independent; the statutes color state and federal decisions, and properly so. If it were possible to read

them all, we should be compelled to come back to Colorado to determine our own rules. With different laws coupled with different states of facts, they cannot always be said to contain enough family resemblance to establish a relationship with our system. We are therefore forced to decline excursions into foreign jurisdictions. As to the law of the forum, see 12 C. J. 484, citing *Pritchard v. Norton,* 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104. That the rules of practice in other jurisdictions may be well worthy of emulation, is true. We have frequently had recourse to them when required. We did so as to this very matter in *Saxton v. Perry, supra.* But we will not change ours with nunc pro tunc effect to fit a case after it is over, nor merely because of subsequent modifications, if any, in other jurisdictions. If the one with reference to waiver of jury trials is considered as being subject to improvement, such arguments should be addressed to our rules committee for recommendation, but we regard it as a most salutary provision, and particularly as applied to this cause.

13. It may be wondered, and no doubt with reason, why we have taken such pains to demonstrate a rule that has been announced as often as the one under discussion. We have done so because of the undoubted sincerity of counsel for defendant who are dissatisfied with the trial court's application of it, and also because of the inability of some of the justices to agree with our opinion. We have therefore traced the rule to its source, and explained the reasons for it. We have also gone back to the records—to the transcripts—in each of the eleven Colorado cases referred to, and examined them. As a result, we are better satisfied than ever that the rule has been rightly applied. We held in *Butts v. Suave, supra,* that "If a plaintiff has no case, it would be useless to require the defendant to proceed." The same principle is applicable when it has been proven, as here, that the defendant has no valid defense.

We have not exhausted our reasons for the affirmance of the judgment, but we think that we have stated enough. We see no possible defense that defendant Parker's able counsel have overlooked, but we find no error in the record, and the judgment will therefore be affirmed.

MR. CHIEF JUSTICE DENISON and MR. JUSTICE BUTLER dissent.

MR. JUSTICE ALTER, having presided at the trial, did not participate.

MR. JUSTICE BUTLER dissenting.

The decision in this case is such a radical departure from principles that seem to me to be well established, that it is impossible for me to concur in the decision, or in the opinion by which it is attempted to support it.

1. As to Parker's negligence. In the opinion it is said that Parker's "culpability appears conclusively from the evidence." I do not so understand the record. True, Reasoner's testimony is that Parker made a statement that may be construed as an admission that he was negligent. Parker testified that he might have said that he was either negligent or careless, but that he did not think he was careless; that he did not think he said what Reasoner testified he said. The majority opinion treats this as conclusive of Parker's guilt. It declares that "if the case had gone to the jury, and if they had found him guiltless in the face of his half-hearted, but nevertheless convincing admissions, we should unhesitatingly direct that the verdict be set aside." The record discloses the following situation: Parker had the right of way. The car driven by Beckman (who, all parties agree, was negligent) approached the intersection from the left. There was evidence from disinterested eye witnesses, as well as from Parker, tending to show that the Parker car was traveling at a moderate rate of speed and was not exceeding the speed limit; that Parker was traveling at the rate

of about 20 miles per hour as he approached the intersection; that the Beckman car was going at a speed of 30 to 40 miles per hour; that it entered the intersection without any diminution of speed and proceeded without the application of brakes; that there was no checking of its speed until the collision; that it proceeded either in a straight line, or, if it turned away from a straight line prior to the accident, it turned a little to the left and then was turned again to the right, directly into the path of the Parker car; that the Parker car was under control, and that as soon as Parker observed that the Beckman car was coming into the intersection despite Parker's right of way under the Colorado Springs ordinances, Parker immediately turned his car to the right, applied his brakes, and attempted to avoid the accident, but was unable to do so; that Parker applied his brakes within a few feet after entering upon the paving; that as a result of the accident the Parker car was swung around in a half circle, remaining on its wheels, and the Beckman car turned over twice, and stopped 105 to 150 feet south of the point of collision. On the other hand, there was evidence which, together with the evidence concerning Parker's admission, tended to show that Parker was negligent. There was a sharp conflict in the evidence. Besides, different inferences could reasonably be drawn from the facts and circumstances that were not in dispute. It requires no citation of authorities to show that in the circumstances disclosed by the record, the question whether or not Parker was negligent was one for the jury to determine. It was a question of fact for the jury, not one of law for the court. Such question was submitted to the jury in the companion case of *Parker v. Ullom,* 84 Colo. 433, 271 Pac. 187. It should have been submitted to the jury in this case.

2. As to the damages. The majority opinion proceeds upon the theory that, as there was no conflict in the evidence to the effect that the deceased was the husband of the plaintiff, that the plaintiff was widowed and her chil-

dren made fatherless, that Plympton had been earning $90 per month, and that the mortality table gave deceased a life expectancy of 28.18 years, the amount of damages recoverable is a simple matter of calculation; and that such calculation should be made, not by the jury, but by the court. I am impressed with the idea that the matter is not so simple as the majority opinion assumes that it is. There are cases where the amount of damages may be determined by mathematical computation. In such cases the court may make the computation and instruct the jury as to the amount. *Baldwin v. Central Sav. Bank,* 17 Colo. App. 7, 67 Pac. 179. But in actions for death by wrongful act the problem is not so simple. In such cases the amount of damages suffered depends upon a variety of circumstances and future contingencies. It "cannot be determined with mathematical exactness." *Denver & R. G. R. Co. v. Gunning,* 33 Colo. 280, 80 Pac. 727. Much latitude must be given the jury in estimating the damages. The plaintiff is entitled to a sum equal to the net pecuniary benefit that she probably would have received from her husband if he had not been killed. The jury may consider the husband's age, health, life expectancy, condition in life, habits of industry or otherwise, ability to earn money, actual earnings, disposition or lack of disposition to provide for the plaintiff, and his habits of sobriety or otherwise; and from these and other circumstances determine the amount of benefit that plaintiff *probably* would have received from her husband had he lived. *Moffatt v. Tenney,* 17 Colo. 189, 30 Pac. 348; *Pierce v. Connors,* 20 Colo. 178, 37 Pac. 721; *Denver & R. G. R. Co. v. Spencer,* 27 Colo. 313, 61 Pac. 606; *Denver & R. G. R. Co. v. Gunning, supra; Mollie Gibson C. M. & M. Co. v. Sharp,* 5 Colo. App. 321, 38 Pac. 850; 8 R. C. L., p. 827.

That there are still further uncertainties to be considered is shown by the following quotation from the opinion in *Denver & R. G. R. Co. v. Spencer, supra*: "In considering this question, account should be taken of his

liability to illness, his incapability of further exertions by reason of age, and that he might, on account of his years, conclude to retire from active work; that in all probability his age would soon incapacitate him from discharging his duties as an employé in the bank, in which he was engaged; that if he did continue to earn money for a portion of his expectancy of life, he would at least expend a part so earned for personal use during the remaining years. All these are contingencies which must be considered.''

Jurors, drawn as they are from different occupations and with varied experience and wide opportunity for observation, are peculiarly fitted to determine such matters. In *Denver & R. G. R. Co. v. Gunning, supra,* we said: ''Necessarily, then, in determining the amount of damages in cases of this character, where future contingencies and a variety of circumstances must be taken into consideration, the award must be left to turn mainly upon the *sound sense and deliberate judgment of the jury. Their own observation, experience and knowledge* respecting these matters, conscientiously applied to the facts and circumstances of the case, would be important for them to consider in determining the amount of the award.''

As to the right of jurors to consider the facts in connection with the knowledge and experience possessed by them in common with men in general, see also *Kansas Pac. Ry. Co. v. Miller,* 2 Colo. 442.

In the majority opinion it is assumed that in ascertaining life expectancy, one has merely to consult the mortality table. This is a mistake. That table is receivable in evidence, ''together with other evidence as to health, constitution, habits and occupation'' of the person. C. L. § 6536. In determining the life expectancy of Plympton, this court is doing what a jury should be permitted to do. In *Alabama Mineral R. R. Co. v. Jones,* 114 Ala. 519, the court said (p. 533): ''The court at the request of the plaintiff instructed the jury that if deceased was, at the

time of his death, in good health and of sober habits, and was 48 years of age, his expectancy of life was as much as eighteen years. This charge was an invasion of the province of the jury. In assessing damages, in cases like this, it devolves upon the jury, upon consideration of all the circumstances bearing upon the subject, as disclosed by the evidence, to ascertain what the duration of the party's natural life would have been. There is no method of ascertaining it, as a positive fact. The period fixed, in any case, is necessarily an inference drawn from many conditions and circumstances. In the same case, different minds of equal intelligence, might reach different conclusions. The tables of mortality, computed upon the experience of life insurance companies, which, being of such universal recognition, courts will judicially notice, are not conclusive that the life expectancy of any particular person, though in good health and of sober habits, should be declared to be the period they estimate. It may be stated as a fact generally known that in the system of insurance many conditions enter, as factors, in the determination of the hazards and duration of a person's life. Though good health and sober habits, at the time, prevail, there may be other physical infirmities creating extraordinary hazard; such, for instance, as heritable diseases in ancestors, undue relation of height to weight, and the like. Again, the occupation the party pursues is of weighty consideration—whether or not involving extraordinary risk and danger. These may all be matters of evidence before the jury, in a given case, and it is for that body to draw the proper inference as to the real duration of the party's natural life. In the present case, not only the age, good health and sober habits of the deceased were shown in evidence, but he was pursuing an occupation attended with unusual dangers. The charge was bad, in that it withdrew that fact from the consideration of the jury, as well as, because it made the court to draw the inference which it was alone the province of the jury to draw."

The question of the amount of damages to be awarded was a jury question. In adjudging that the plaintiff has been damaged in the sum of $5,000, the trial court invaded the province of the jury.

3. As to the effect of the motions for a directed verdict. The majority opinion sets out a part of the proceedings. For a better understanding of the situation, the entire proceedings should be considered. After the evidence on both sides was in, Parker moved for a directed verdict in his favor. Whereupon Beckman moved for a directed verdict in his favor; and the plaintiff then moved for a directed verdict for $5,000 in her favor against both defendants. Thereupon the following proceedings were had:

"The Court: The effect of all parties joining in a motion for a directed verdict is a stipulation that there are no facts to be submitted to the jury, and the Court may direct a verdict, so there is nothing for the jury to do unless you wish the jury to remain in attendance during the judgment of the Court.

"Mr. Hutton [attorney for Parker]: If your Honor please, in response to your Honor's suggestion, it is my understanding that the defendant Parker has a right at this stage of the case to make a motion for a directed verdict in favor of the defendant Parker, and to ask that the same be ruled upon; that in the event such a motion should be overruled, or not allowed, it would be the right of the defendant Parker then to have the case submitted to the jury on any disputed facts.

"The Court: That is not the law, Mr. Hutton. In four or five decisions of the Supreme Court, where all parties have joined in a request for a directed verdict, it has been held that that is in effect a stipulation that there are no facts to be submitted to the jury, and that the Court may either direct a verdict or enter judgment; and that will be the holding in this case, because that is the situation here.

"Mr. Hutton: So I understand, if your Honor please, and I wish to be understood, as far as making this motion on my part is concerned on behalf of the defendant Parker, that we make it *with a reservation, in the event that the motion should be overruled, of our right to a submission of the issues of the case to the jury.* So I understand, that whatever right the defendant has to present and have heard and ruled upon a motion for directed verdict at the close of all the evidence, that right can in no measure be affected by the action of other parties in the case. Now, if your Honor proposes, as your Honor has indicated, that in view of the motion for directed verdict as made by the defendant Parker, and the motion which has followed for a directed verdict on behalf of the plaintiff, and the motion for directed verdict by the defendant Beckman to treat these motions as having the legal effect of a waiver of a right to the submission of the issues in the case to the jury, and has the conclusive legal effect of presenting the case to the Court for a final decision so far as the trial Court is concerned, without any later submission, in any event, of the issues to the jury, we are frank to say to the Court that we are disposed to withdraw the motion and to submit the case to the jury; but do so only in view of the indicated proposal of your Honor in the light of the motions that have been made to treat the case as one in which the jury is wholly waived and the case is submitted to the Court for his decision.

"The Court: Do you now ask leave to withdraw your motion with the qualifications which you have indicated?

"Mr. Hutton: Yes. I would like also to say to your Honor, that we think it would be error to decline to consider the defendant Parker's motion for a directed verdict at this stage of the case, except upon condition that it be regarded as a waiver of the right to any submission of the issues to the jury.

"The Court: It is my opinion, from the decisions of the Supreme Court, that you are not permitted to make

a stipulation in open court, that being the effect of the motions, and then withdraw from the effect of the motions, and it will not be permitted.

"Mr. Hutton: Save our exception to the ruling of the Court.

"The Court: Now, I want to know whether you want me to keep the jury. *I am going to determine the case.* Is there any objection to my entering a judgment, or do you want the verdict directed? That question has never been passed on by the Supreme Court.

"Mr. Strachan [attorney for plaintiff]: I think we should not excuse the jury unless by stipulation of all parties.

"The Court: I will hear you on your motion. I might suggest now that if you desire to submit the motion without argument I will determine it, and there may be a motion for a new trial, or you may argue it now and I will dispense with the motion for a new trial.

"Mr. Hutton: I would like to present the matter now, if your Honor please.

"The Court: Very well.

(Argument of counsel to the Court)

"The Court: The Court denies the motion of the defendant Parker and the defendant Beckman for a directed verdict, and in doing so I am acting upon the law as I conceive it to be, that when all parties join in a request for a directed verdict it is a stipulation that there are no facts to be submitted to the jury, or if there are any facts that they may be determined by the Court.

"Mr. Hutton: May I ask at this time, on behalf of the defendant Parker, that the Court submit to the jury in this case the issue as to whether or not the defendant Parker was guilty of negligence proximately causing the death of the decedent, Hercules Plympton, and also that the Court submit to the jury for its determination the issue as to whether or not, either by virtue of independent negligence on the part of Plympton himself, as one of those riding in the Beckman car, or by virtue of the exist-

ence of a joint enterprise in which they were all principles and agents of each other, the decedent Plympton was guilty of contributory negligence; and further, that the Court submit to the jury, if your Honor please, the issue as to whether or not the plaintiff in this case has been damaged under the evidence to the extent that is claimed by her.

"The Court: The request is denied.

"Mr. Hutton: Save my exception.

"The Court: The findings of the Court are, that the decedent Plympton was not guilty of negligence and that the defendants in this action were both guilty of negligence, the proximate cause of the death, and that there is no evidence of a joint enterprise or common venture in the case. Those findings may be modified, after a consideration of them, but that is the effect of the findings.

"Mr. Hutton: We except to the findings of your Honor, except to your Honor's overruling of the defendant Parker's motion for directed verdict, and we except to any action on the part of the Court directing the jury to bring in a verdict for the plaintiff in this case, and particularly in the light of the request of the defendant Parker that the issue of negligence on his part, and of contributory negligence, and the issue with reference to common enterprise, be submitted to the jury for its findings and determination.

"Thereupon, the Court directed the jury to return the following verdict (omitting the formal portions thereof):
"We, the jury, duly empaneled and sworn in the above entitled cause, do, upon our oaths, find the issues herein joined in favor of the plaintiff and against the defendants, and assess her damages in the sum of Five Thousand ($5,000.00) Dollars."

Counsel for Plympton contend that the request by both parties for a directed verdict was a waiver of the right to have the jury pass upon disputed facts, and in effect was a stipulation that the facts may be found by the court, the same as though the case, by stipulation, had

been tried to the court without a jury. That contention is upheld in the majority opinion. It is said that we have repeatedly decided that the effect of motions by both parties for a directed verdict is a submission of the cause to the court on both the law and the facts. Prior to the decision in the present case this court never decided that such motions had that effect where either party made known his wish to have the jury pass upon the facts. Let us consider the cases.

In *Saxton v. Perry,* 47 Colo. 263, 107 Pac. 281, the rule is stated thus: "Where at the close of the testimony, each party moves for a directed verdict *and neither party,* after a ruling on such motions, *requests the submission of any fact question to the jury,* the decision of the court has the effect of a general verdict, and is a finding upon all fact questions, in favor of the successful party."

In that case the court was not requested to submit any question of fact to the jury. It was not intimated, at any stage of the proceedings, that either party wished the jury to pass upon the facts; and because no such request was made, the court held as it did. In all other cases where such a situation was presented, this court has made the same ruling. In the Saxton case, after stating the law in the words quoted above, and quoting the language of Circuit Judge Adams in *Michigan Home Colony Co. v. Tabor,* 141 Fed. 332, 72 C. C. A. 480, the court said, "This principle is supported by a mass of cases, both from the federal and state courts," citing cases, in not one of which did either party request that the facts be submitted to the jury. Among those cases we find *Beuttell v. Magone,* 157 U. S. 154, 15 Sup. Ct. 566. That case was followed in *Empire State Cattle Co. v. Atchison Ry. Co.,* 210 U. S. 1, in which the court said:

"It was settled in *Beuttell v. Magone, supra,* that where both parties request a peremptory instruction *and do nothing more,* they thereby assume the facts to be undisputed and in effect submit to the trial judge the determination of the inferences proper to be drawn from them.

But nothing in that ruling sustains the view that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting, or the inferences to be drawn from the testimony are divergent. To hold the contrary would unduly extend the doctrine of *Beuttell v. Magone,* by causing it to embrace a case not within the ruling in that case made. The distinction between a case like the one before us and that which was under consideration in *Beuttell v. Magone* has been pointed out in several recent decisions of Circuit Courts of Appeals. It was accurately noted in an opinion delivered by Circuit Judge Severens, speaking for the Circuit Court of Appeals for the Sixth Circuit, in *Minahan v. Grand Trunk Ry. Co.,* (70 C. C. A. 463) 138 Fed. Rep. 37, 41, and was also lucidly stated in the concurring opinion of Shelby, Circuit Judge, in *McCormack* [McCormick] *v. National City Bank of Waco,* (73 C. C. A. 350) 142 Fed. Rep. 132, where, referring to *Beuttell v. Magone,* he said (p. 133):

" 'A party may believe that a certain fact which is proved without conflict or dispute entitles him to a verdict. But there may be evidence of other, but controverted, facts, which, if proved to the satisfaction of the jury, entitles him to a verdict, regardless of the evidence on which he relies in the first place. It cannot be that the practice would not permit him to ask for peremptory instruction, and, if the court refuses, to then ask for instructions submitting the other question to the jury. And if he has the right to do this, no request for instructions that his opponent may ask can deprive him of the right. There is nothing in *Beuttell v. Magone, supra,* that conflicts with this view when the announcement of the court is applied to the facts of the case as stated in the opinion.' "

In the case of *In re Iron Clad Mfg. Co.,* 116 C. C. A. 642, the court said: "We find nothing in the various motions made at the close of the case to preclude the

bankrupt from asking that the issues be sent to the jury. The fact that each party asks for a peremptory instruction to find in his favor does not submit the issues of fact to the court, so as to deprive either party of the right to ask other instructions, and to except to the refusal to give them, or to deprive him of the right to have questions of fact submitted to the jury, where the evidence on the issues joined is conflicting, or divergent inferences can be drawn therefrom. Beuttell v. Magone, 157 U. S. 154.'' And see *Sena v. American Turquoise Co.,* 220 U. S. 497, 31 Sup. Ct. 488; *Hover v. Denver & R. G. W. R. Co.* (C. C. A., 8th Circuit), 17 Fed. (2d) 881; *Koehler v. Adler,* 78 N. Y. 287; *Kirtz v. Peck,* 113 N. Y. 222, 21 N. E. 130; *Shultes v. Sickles,* 147 N. Y. 704, 41 N. E. 574; *Sundling v. Willey,* 19 S. Dak. 293, 103 N. W. 38; *Manska v. San Benito Land Co.,* 191 Iowa, 1284, 184 N. W. 345.

In the Saxton case, supra, we adopted the rule announced in the Beuttell case, supra. We have rendered no decision that has overruled the decision in the Saxton case, or that in any manner has weakened or qualified it. On the same state of facts the same principle was announced by this court, in substantially the same words, in *O'Brien v. Galley-Stockton Shoe Co.,* 65 Colo. 70, 173 Pac. 544, and by the Court of Appeals in *Butcher v. Butcher,* 21 Colo. App. 416, 122 Pac. 397, and *Nisbet v. Siegel-Campion L. S. Co.,* 21 Colo. App. 494, 516, 123 Pac. 110. In the O'Brien case the court based its ruling upon the Saxton case, no request having been made to submit the facts to the jury.

As a conclusive justification for the decision, the majority opinion (paragraph 3) quotes certain expressions occurring in several late Colorado cases. There is a failure to notice the well-recognized distinction that exists between a decision by the court and the language used in an opinion. Opinions always should be considered in connection with the facts before the court; divorce them, and confusion and error naturally result, as in the present case. In *Wadsworth v. Union Pac. Ry.*

*Co.,* 18 Colo. 600, 33 Pac. 515, Mr. Justice Elliott (p. 610) quoted the following from the opinion of Chief Justice Marshall in *Cohens v. Virginia,* 6 Wheat. 97: "It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

It was said by Mr. Justice Campbell in *Union Pac. Ry. Co. v. Hanna,* 73 Colo. 162, 168, 214 Pac. 550, that a statement made in an opinion "should be read in the light of the facts"; and by Mr. Justice Garrigues in *Montgomery v. Colorado Springs & I. Ry. Co.,* 50 Colo. 210, 214, "An opinion is only authority on the point decided"; and by Mr. Justice Lamar in *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U. S. 220, 234, 33 Sup. Ct. 32, "What was said in the opinion must be limited, under well-known rules, to the facts and issues involved"; and by Mr. Justice Shiras in *Parsons v. District of Columbia,* 170 U. S. 45, 51, 18 Sup. Ct. 521, "It is trite to say that general principles announced by courts, which are perfectly sound expressions of the law under the facts of a particular case, may be wholly inapplicable in another and different case"; and by Mr. Justice White in *United States v. Eaton,* 169 U. S. 331, 348, 18 Sup. Ct. 374, "general language must be confined to the precise state of facts with reference to which it was used"; and by Chief Justice Marshall in *Ogden v. Saunders,* 12 Wheat. 213, 333, "But that decision is not supposed to be a precedent for Ogden v. Saunders, because the two cases differ from each other in a material fact; and it is a general rule,

expressly recognized by the court in Sturgis v. Crowninshield, that the positive authority of a decision is coextensive only with the facts on which it is made." And see *Louisville & N. R. Co. v. County Court of Davidson,* 1 Sneed (Tenn.) 637, 695.

The language quoted from *Saxton v. Perry, supra,* applied strictly to the facts in that case. Every part of it was necessary to a decision of the case; *it was the decision.* Each and every part of the rule announced in that case is an inseparable part thereof. The rule can no more be split up, and one of its parts considered by itself, without destroying the rule, than can the sentence "The fool hath said in his heart 'There is no God' " be treated in a similar way without destroying its meaning.

Consider the cases cited and relied upon to support the present decision.

The quotation from *Watkins v. Security Benefit Association,* 81 Colo. 66, 255 Pac. 452, illustrates what may happen when a court quotes general language, but fails to consider the facts. An examination of the abstract in that case shows that there was no disputed question of fact to be submitted to the jury. The trial court held that, *"as a matter of law,* * * * the plaintiff has not proven a case." It appears, therefore, that the trial judge confined himself, as he should, to the purely judicial duty of deciding a question of law; he did not assume to perform the duties of a jury.

The language quoted from *McGhee Investment Co. v. Kirsher,* 71 Colo. 137, 204 Pac. 891, shows that there was no conflict in material evidence; hence there was no jury question, and, naturally, no request to submit the facts to the jury was made. The statement as to what would happen "if the situation were otherwise" is dictum.

In *McLagan v. Granato,* 80 Colo. 412, 252 Pac. 348, *the facts were submitted to the jury* after both parties moved for a directed verdict. If that case had been followed in the present case, the facts would have gone to the jury, as Parker requested.

In *Cascade Auto Co. v. Petter,* 72 Colo. 570, 212 Pac. 823, the court was not requested to submit the facts to the jury. That being the situation, the court properly held that the whole case was submitted to the judge. In support of its ruling, the court cited, inter alia, *Beuttell v. Magone, supra,* and *Nisbet v. Siegel-Campion L. S. Co., supra.*

In *Boldt v. Motor Securities Co.,* 74 Colo. 55, 218 Pac. 743, neither party requested the submission of the facts to the jury.

The same situation existed in *Commonwealth Casualty Ins. Co. v. Kuhrt,* 75 Colo. 175, 225 Pac. 251, in which *Saxton v. Perry, supra,* was cited as authority for the ruling; and in *Catlin v. Moynihan,* 76 Colo. 164, 230 Pac. 1114, and in *Butts v. Sauve,* 79 Colo. 317, 245 Pac. 713, where the court cited *Saxton v. Perry, supra,* in support of the decision.

In each and every case cited in paragraph 3 of the majority opinion (except the McLagan case) the facts were the same as in the Saxton case; namely, motions for a directed verdict were made by both parties, *and neither party requested the submission of any fact to the jury.* The general language in the opinions, therefore, as we have seen, "must be confined to" that "precise state of facts." So confined, the *decision* in each case, as in the Saxton case, was that, where both parties move for a directed verdict, and neither party requests the submission of any fact to the jury, the decision of the court has the effect of a general verdict, and is a finding upon all fact questions in favor of the successful party.

4. The argument in paragraph 4 of the majority opinion, based upon the power of this court to prescribe rules of practice and procedure, requires but slight notice. Rules are made in two ways; by formal adoption by the court sitting *en banc,* and by decisions of cases submitted to the court. When the court decides a point of practice, it "prescribes" a rule of practice; but it requires a decision by the court to accomplish that result. It has al-

ready been shown that previous to the present one, there never has been a *decision* by this court adopting such a rule as the court has established and made retroactive in this case.

5. In regard to the reference, in paragraph 5, to the rule concerning the submission of special interrogatories, it requires no argument to show that the question of special interrogatories is not involved in this case.

6. The law encourages the disposition of law points before submitting the facts to the jury; a decision of the former may settle the case, thereby dispensing with a trial on the facts. Thus, upon demurrer to the complaint, the court may decide that, assuming the truth of all that the plaintiff alleges, he is not entitled to judgment. This dispenses with a trial on the facts. So, upon demurrer to an answer, the court may decide that the facts pleaded do not defeat the plaintiff's right to a judgment. In such case, also, no trial on the facts is necessary. At the close of the plaintiff's evidence in a jury trial, the defendant may believe that, as a matter of law, the facts proven by the plaintiff do not entitle the plaintiff to a judgment. To have this law question determined, he moves for a nonsuit. If the court decides against the defendant, the trial on the facts—to the jury, not to the judge—proceeds. When all the evidence is in, the plaintiff or the defendant may believe that, as a matter of law, and without a determination of the disputed facts, he is entitled to judgment. By a motion for a directed verdict, he presents to the court this question—purely a law question. If the court decides this question of law against him, the case goes to the jury, the sole trier of facts. Why should the procedure be different in case both parties submit to the court this question *of law,* and one of the parties makes it clear to the court at any time during the proceedings that he insists upon having the disputed facts submitted to the jury in the event of the court's deciding against him on the law question? The decision in the present case abolishes a general practice of long standing,

a practice that is convenient, useful, just—one that recognizes the separate functions of judge and jury, and confines the judge within the limits prescribed by law. Only when it appears that a party intended to waive a jury trial should he be held to have waived it. Section 191 of the Code of Civil Procedure provides: "In actions * * * for injuries, an issue of fact *must* be tried by a jury, *unless a jury trial is waived* or a reference is ordered, as provided in this Code." Did Parker waive his right to a jury trial on the issues of fact? He did not. Both before and after the court intimated what its ruling on the motions for a directed verdict would be, Parker's attorney, as we have seen, not only requested the court to submit to the jury all questions of fact, but vigorously insisted upon his client's right to have that course pursued. Repeatedly it was made clear to the trial court that Parker did not intend to waive that right, and would not and did not consent to the substitution of the judge for the jury as the trier of the facts. His motion for a directed verdict submitted to the court a question of law —that, and nothing more. Plympton's counsel, who have shown no lack of diligence, have not called to our attention a single case where, upon a record such as this, or remotely resembling this, it has been held that a trial judge was entitled to perform the duties of a jury; nor is any such case cited in the majority opinion. It is reasonable, therefore, to assume that there is no such case.

The right to a jury trial is a valuable right; so much so, that the Constitution (art. 2, § 23) provides that such right shall remain inviolate in criminal cases. Indeed, in some criminal cases the right probably cannot be waived. In cases where a waiver is permitted, a person should not be held to have waived a jury trial unless it appears that he intended to waive it. To say that in this case Parker intended to waive his right to have the jury pass upon the facts, would be an astounding state-

ment, one that is flatly contradicted by the record. In holding him to a waiver in the face of such a record as 'we have before us, this court, in my opinion, has done an injustice, and has taken a position in which it stands, and doubtless will continue to stand, alone.

The judgment should be reversed, and the cause remanded for further proceedings.

When Mr. Justice Walker was a member of this court, he expressed concurrence in views now embodied, in substance, in this dissenting opinion. Before announcement day his term of office expired.

MR. CHIEF JUSTICE DENISON concurs in this dissenting opinion.