CORA L. KALLOCH *vs.* MARY ELWARD.

Knox.    Opinion November 25, 1919.

*Rule as to married women being exempt from arrest under R. S., Chap. 66, Sec. 4.*
*Rule as to this exemption being a personal privilege that may be lost*
*by waiver or estoppel.*

The plaintiff brought this action to recover damages from the defendant because of her alleged alienation of the affections of the plaintiff's husband. The defendant was arrested on a capias writ and gave a bail bond in the sum of eight thousand dollars, with two sureties. The writ was entered at the September Term, 1918, Knox County, and an attorney appeared for the defendant at that term. The case was then continued to the January Term, 1919, and again to the April Term, 1919, when trial was had and a verdict rendered in favor of the plaintiff.

During the trial it appeared to the utter surprise of the plaintiff that the defendant was a married woman, Mrs. Mary L. Davis, and that she had held herself out as a single woman on coming to Maine from another State, in accordance with a prearranged plan with her husband who in the meantime had gone to Pennsylvania.

At the same term, after verdict against her and before judgment, the defendant filed a motion asking that she and her sureties on the bail bond be exonerated and discharged because she was a married woman and under the statutes of this State was exempt from arrest. The presiding Justice granted the motion "as a matter of legal right," and to this ruling exceptions were taken by the plaintiff.

*Held:*

1. That exemption of a married woman from arrest is granted by R. S., Chap. 66, Sec. 4.

2. That exemption from arrest is a personal privilege and as such may be lost by either waiver or estoppel.

3. That under all the facts and circumstances of this case the defendant was equitably estopped from claiming an exoneretur.

Action on the case for alienation of the affections of the plaintiff's husband. The defendant was arrested as a single woman upon a capias writ and gave bail for her appearance. During trial of the

case the plaintiff, for the first time, had knowledge that the defendant
was a married woman at the time of her arrest.    Verdict was rendered
for plaintiff, and defendant filed motion before judgment asking that
the bail be exonerated.    The presiding Justice granted the motion as
a matter of legal right; to which ruling plaintiff filed exceptions.
Judgment in accordance with opinion.

Case stated in opinion.

*Frank H. Ingraham, and A. S. Littlefield,* for plaintiff.

*E. C. Payson,* for defendant.


SITTING:   CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL,
    DEASY, JJ.


CORNISH, C. J.   This case is before the Law Court on plaintiff's
exceptions to the order of the presiding Justice granting the defend-
ant's motion and ordering an exoneretur on a bail bond.

The facts are these.   On July 19, 1918, an action was brought by
the plaintiff under R. S., Chap. 66, Sec. 7, to recover damages of the
defendant because of her alienation of the affections of the plaintiff's
husband.   A capias writ was issued returnable at the September
Term, 1918, of the Supreme Judicial Court for Knox County, and in
accordance with its commands, the defendant was arrested and held
to bail in the sum of eight thousand dollars.   The bail bond was signed
by Mary L. Elword as principal and C. E. Bicknell and A. B. Crockett
as sureties, was accepted by the sheriff, and the defendant was released
from custody.   The condition of the bail bond was as follows:
"Now therefore if the above bounden defendant shall appear and
answer unto said suit and abide final judgment thereon and not avoid,
then this obligation shall be void" etc.

The writ was duly entered at the September Term, 1918, the bail
bond was filed in court, an attorney appeared for the defendant, and
the action was continued to the January Term and again to the
April Term, 1919, when the case was tried and a verdict rendered in
favor of the plaintiff.   Early in the trial it appeared, to the surprise
of the plaintiff, that the defendant was a married woman, Mrs. Mary
L. Davis, and that she had held herself out as a single woman on
coming to Maine in accordance with a prearranged plan with her

husband who in the meantime had gone to Pennsylvania. The defendant's attorney stated that he had received no information in regard to the marriage until about one month before the trial.

At the same term, after verdict against her and before judgment, the defendant filed a motion asking that she and her sureties on the bail bond be exonerated and discharged because she was a married woman, and under the statute of this State was exempt from arrest. The presiding Justice granted the motion "as a matter of legal right" and to this ruling exceptions were taken by the plaintiff.

The statute in this State granting a married woman exemption from arrest is as follows:

"A husband married since April 26, 1852, is not liable for the debts of his wife contracted before marriage, nor for those contracted afterward in her own name, for any lawful purpose; nor is he liable for her torts committed after April 26, 1883, in which he takes no part; but she is liable in all such cases; a suit may be maintained against her therefor, and her property may be attached and taken on execution for such debts and for damages for such torts, as if she were sole; but she cannot be arrested." R. S., Chap. 66, Sec. 4.

Exemption from arrest however is a personal privilege and as such may be lost either by waiver or by estoppel. Thus at common law a party or a witness duly summoned in a process then pending is immune from arrest while in attendance upon court, but the privilege may be waived. *Brown* v. *Getchell*, 11 Mass., 11; *Smith* v. *Jones*, 76 Maine, 138. So under the constitution of Maine, senators and representatives, except in certain cases, are privileged from arrest "during their attendance at, going to and returning from each session of the Legislature." Art. IV, Part 3, Sec. 8. And yet it has been held that this privilege, though guaranteed by the organic law of the State, may be waived. The jury found such a waiver in *Chase* v. *Fish*, 16 Maine, 132, and this court sustained the finding.

In the case at bar the exemption is created by statute, but there is no reason why the doctrines of waiver and estoppel should not apply and work their legitimate effects the same as if the exemption were created at common law or under the constitution. A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right. Thus it has been held in an elaborate opinion in which the doctrine is fully discussed that a statute providing that "No waiver of demand or

notice by an indorser of a promissory note is valid unless it is in writing signed by him or his lawful agent," may be waived or the conduct of the indorser may have been such that he is estopped to set up the statute. *Hallowell Bank* v. *Marston*, 85 Maine, 488. "A statutory or even a constitutional provision, made for ones benefit is not so sacred that he may not waive it, and having once waived it he is estopped from thereafter claiming it," says the court in that case.

It remains therefore to ascertain whether the conduct of the defendant has been such in this case that she is estopped from now claiming the privilege of immunity from arrest. Has she so acted as to induce the plaintiff, relying upon her acts, to take steps which otherwise he would not have taken, and to change his course to his own disadvantage, so that, having remained silent when she should have spoken, to allow her now to speak, even to allege and prove the truth, would be contrary to equity and good conscience?

That the defendant was in fact a married woman, Mrs. Mary L. Davis, at the time of her arrest sufficiently appears from the bill of exceptions. She was masquerading as a single woman under the name of Mary L. Elword, or Mary L. Elward, or Mary Elwood. The reason for this subterfuge is best known to the defendant and her husband, but it is admitted that it was in accordance with a preconcerted plan between them when she came to Maine and he went to Pennsylvania. The plaintiff was therefore justified in suing her as a feme sole and in making the arrest on mesne process. Had she then told the truth, the proceedings would immediately have been dropped, because the object of the service by arrest was undoubtedly to secure if possible a guaranty of the payment of judgment through the sureties on the bail bond, and if she were a married woman so that coverture would prevent the taking of such a bond, it is fair to presume that the unnecessary expense of costs and counsel fees would have been avoided by the plaintiff. The bail bond was supposed to take the place of attached property, and as security for the judgment if one were obtained.

But the defendant did not disclose the true situation, which she knew and which the plaintiff did not know and had no means of knowing, and the defendant was aware of his ignorance. Instead she gave the bail bond. That of itself has been held not to constitute a waiver, *Baker* v. *Copeland*, 140 Mass., 342; *Dickinson* v. *Farwell*, 71 N. H., 213, but in the latter case the court said by way of dictum:

"If the plaintiff does not know of the facts which create the privilege, —of the defendant's attendance upon court as a witness for example, —and the defendant is aware of the plaintiff's ignorance he may possibly waive the privilege by omitting to disclose the facts. But it is not necessary to decide that question, for it is not claimed that the plaintiff was ignorant of the reason why the defendant happened to be within the jurisdiction at the time of his arrest."

We would not rest our decision therefore merely upon the defendant's failure to disclose the facts at the time of arrest, because it is undoubtedly true as a general principle that if a person deprives another of his liberty, he does so at his peril. But that is one link in the chain. The action was entered in court and the bail bond was filed. At the April Term, 1919, pleadings were filed. The general issue was pleaded with a brief statement that the affections of the plaintiff's husband for the plaintiff were destroyed before he met the defendant. Up to that point the plaintiff had been kept in utter darkness as to the true situation. The plaintiff's attorney opened the case to the jury, and after he had concluded he asked counsel for the defendant if he would admit the marriage and identity of the parties, referring of course to the plaintiff and her husband. The defendant's attorney replied, "if you mean that Miss Elward is Mrs. Mary L. Davis, yes." This was the first intimation that the plaintiff or her counsel had that the defendant was a married woman. The trial then proceeded, and after a verdict against her this motion for an exoneretur was made by the defendant. We think this came too late. To permit such a scheme to succeed is to put a premium on wilful deception, the practice of which had involved the plaintiff in useless cost and expense, and worked gross injustice.

It is true, as claimed by the defendant, that the status of the petitioner for discharge at the time when application is made is the test, and it might happen that although the arrest had been valid when made, through intervening circumstances a discharge should be granted, as for instance, if the debtor had received his discharge in bankruptcy before judgment rendered. The reason is that if the principal were surrendered by the bail, the court could not commit him, or if committed he would be entitled to immediate discharge. *Beers* v. *Haughton*, 9 Pet., 329; *White* v. *Blake*, 22 Wend., 162; *Washburn* v. *Phelps*, 24 Vt., 506; *Champion* v. *Noyes*, 2 Mass., 481, cited in *Fogg Co.* v. *Bartlett*, 106 Maine, 122, 124. That however is

not this case. Here if the bail should surrender the principal she would not be entitled to a discharge because through her own conduct she has deprived herself of this privilege she had once possessed, and having once waived it, she is estopped from thereafter claiming it.

Authorities for the position taken are not lacking.

In *Moses* v. *Richardson*, 8 B. & C., 421, the court of Kings Bench declined to discharge a married woman from arrest on execution where she had been sued as a feme sole, and suffered judgment to go by default. "She must be left to her writ of error," said Lord Chief Justice Tenterden. In *Poole* v. *Canning*, L. R., 2, P. C., 241, a married woman, sued as a feme sole, pleaded coverture but offered no evidence in support of the plea. A verdict was found against her and she was afterwards arrested upon the execution. She then applied for a discharge. The discharge was refused. Keating J. said, "She comes to ask for her discharge on the ground that she is that which by the judgment of the Court she is pronounced not to be." Willes J. said there was no authority for extending the power of discharge "to the case of one sued as a feme sole suffering judgment by default, or to the case of a married woman who has pleaded her coverture and has allowed the verdict to go against her on the trial of that issue and so has created a sort of estoppel of the advantage to which it would be unjust to deprive a creditor without at least indemnifying him against the costs which he has been unnecessarily put to."

These two cases were cited and quoted in *Winchester* v. *Everett*, 80 Maine, 535, 541, where it was held that a judgment creditor is not liable in trespass for refusing on notice that his judgment debtor is a married woman, to release her from arrest already made by an officer on an execution regularly issued on a judgment rendered against her on default.

In *Weston* v. *Palmer*, 51 Maine, 73, the two defendants were in fact husband and wife, but there was nothing in the writ to indicate that relation and the court held that the wife was sued as a feme sole. Coverture was not pleaded. Judgment was rendered on default and the court refused a writ of error. The ground of the decision is stated as follows:

"They now claim that because they had a legal defense . . . . which they chose not to avail themselves of, the judgment is erroneous and ought to be reversed. We think otherwise. They had their

day in court.   They have once had a fair opportunity to try the same questions which are now presented.   They chose not to avail themselves of it, and the law will not allow them another."

The same principle of equitable estoppel runs through all these cases.   It obtains here.   The defendant in this legal battle voluntarily laid down or designedly concealed a weapon which she might have successfully used.   It is too late now for her to resume it and thereby unjustly deprive the plaintiff of the fruits of her victory.

*Exceptions sustained.*