No. 16,483.

JOHNSON *v.* NEEL.
(229 P. [2d] 939)

Decided March 26, 1951.

Mr. WILLIAM F. MCGLONE, KATHARINE H. JOHNSON, for plaintiffs in error.

Mr. E. ELLISON HATFIELD, Mr. WILLIAM C. HORTHER, Mr. BENJAMIN E. SWEET, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court, where plaintiffs in error were named "petitioners," and defendant in error was named "respondent."

Petitioners sought to remove a cloud upon the title to real estate owned by them and located in La Plata county, which cloud allegedly was created by the filing by respondent of a mechanic's lien. The specific grounds upon which petitioners sought the removal of said cloud upon their title were: That any labor performed in the construction of the dwelling house and garage mentioned in the lien statement was "performed by persons other than the respondent"; that any materials furnished in the construction of said buildings, "were furnished by persons other than the respondent"; and that the respondent, "is not a person entitled to the provisions of The Mechanics' Lien Act."

Respondent, for answer, denied every allegation set out in petitioners' complaint, and for counterclaim alleged that he entered into a verbal contract with petitioners to furnish labor and material, and to build and construct for them a dwelling house and other buildings upon the real estate owned by them. He further alleged that petitioners agreed to pay to him the cost of said labor and materials plus a contractor's fee of ten per cent thereof, and that payment was to be made by petitioners "in monthly installments as the said labor and materials were furnished by respondent, each installment payment to be in an amount sufficient to cover and satisfy the entire amount due to respondent, under the terms of said verbal contract, for the labor and materials

furnished, plus the contractor's fee of ten percent (10%) of said amount, during the preceding thirty day period."

Respondent also alleged that pursuant to his contract he commenced work on or about the 7th of May, 1948, and diligently proceeded with the erection of the buildings, and furnished labor and material therefor until October 8, 1948; that the value of said labor and material thus furnished was $11,366.28; and that the petitioners failed and refused during all of said period of time to make any payment to respondent on account of said contract and thereupon he elected to treat the contract at an end, and on October 20, 1948, he filed his statement of mechanic's lien. Attached to the counterclaim filed by respondent was a statement duly executed by his attorneys, as follows:

"Demand for Trial by Jury

"Respondent Garland Neel does hereby demand a trial by jury in the above entitled action, both as to the issues raised under the petition and under the counterclaim."

After motions filed by petitioners were overruled they filed an instrument entitled, "Answer to Counterclaim of Respondent and Counterclaim of Petitioners," in which they denied that they entered into a contract with the respondent upon a "cost-plus" basis. They alleged that the oral contract with respondent was that they would pay him the sum of $7,300.00 upon completion of the carpenter work, masonry and roofing work which was to be done in accordance with plans and specifications furnished him. Petitioners further alleged that in the event any materials used by respondent were paid for by them, the value thereof was to be deducted from the maximum contract price of $7,300.00; that they expended $4,180.24 in acquiring materials to be used by respondent's carpenters, masons and roofers; and that on October 8, 1948, respondent, without just cause or excuse, refused to furnish further labor upon said buildings and thereby abandoned and breached his contract,

notwithstanding that petitioners had performed "each and every part of their said contract with respondent." Petitioners offered to pay respondent the difference between $7,300.00 and the cost of materials paid for by them in the event that respondent would complete the buildings. They claimed compensatory damages in the amount of $11,041.95, plus $5,000.00 punitive damages. Respondent denied the facts upon which petitioners' claim for damages was based.

A pre-trial conference was held, at the conclusion of which the court entered an order in which it held, among other things, that under the pleadings the lien statement filed by respondent was invalid for the reason that the building was not completed and there had been no cessation from labor upon the unfinished structure for thirty days prior to the filing of the lien statement, as provided by section 23, chapter 101, '35 C.S.A. The order contained the following: "In the opinion of the Court the contention of the petitioner is correct that if the respondent relies upon the provision for an unfinished contract and/or unfinished structure, the time for filing the lien claim statement would have started November 8th and ran for a period of 3 months therefrom." There also was a provision in the order that respondent be given ten days within which to amend his pleadings for the purpose of meeting the stated objection to the legality of the lien statement, and it was further provided that if no such amendment was filed petitioners "may draft an order holding said lien claim statement void, and with proper provisions to remove the cloud from the title of petitioner's property in question." No amendment raising different issues was filed by respondent, and no further order was tendered to, or signed by, the trial court before trial of the action.

The above quoted demand for jury trial was filed March 15, 1949, and the case was reached for trial August 30, 1949, at which time no statement whatever was made by the court or any of the litigants as to

whether or not the cause should be tried to a jury. No formal disposition was made of the demand for jury trial; the cause proceeded to trial to the court without a jury and all parties participated in said trial, without objection, at the conclusion of which the court entered its "Findings of Fact, Conclusions of Law and Judgment," from which we quote the following:

"It is the Conclusion of the Court, that the only contract the Court can find from the evidence existing between the parties was the contract between petitioners and respondent that respondent should do carpentry work, masonry work and roofing and furnish materials for the construction of the dwelling house, a two car garage and pump house on the property of the petitioners, and was to be paid therefor on the basis of cost of labor and materials plus 10% contractor's fee; that the petitioners failed to make payments from time to time as required; that the 8th day of October, 1948, on account of the failure of the petitioners to make payments the respondent ceased work under the contract; that the contract was then treated by both parties as being at an end. No binding contract was made by the parties to settle the controversy existing between them; that respondent as of said date was entitled to receive the sum expended by him for labor and materials plus the 10% contractor's fee.

"That as matters then stood there was an unfinished contract entered into by the respondent as principal contractor for an unfinished building; that the contractor was within his rights in refusing to proceed further upon the building without payment for the materials and labor theretofore placed in the construction of the buildings.

"That the mechanics lien claim was filed prior to the time provided by law for filing and is of no effect herein.

"It is Therefore Ordered, Adjudged and Decreed:

"1: Mechanics lien statement filed in the office of the county clerk of La Plata County, Colorado and recorded

in Book 275 at page 293 is null and void and does not constitute any lien on the property the lien described.

"2: Judgment is hereby entered in favor of respondent and against the petitioners, and each of them, for labor and materials furnished by respondent in the construction of said dwelling house, garage and pump house, together with 10% additional as contractor's fee; all in the sum of $11,586.47, together with interest thereon from the 8th day of October, 1948 to the date of this order, to-wit: the 24th day of September, 1949; said interest being in the sum of $668.10; For court costs in this behalf expended in the sum of $10.00."

Upon application of petitioners for stay of execution the trial court entered an order which provided, inter alia:

"It is Further Provided that as security for this, and any further stay of execution, petitioners shall execute a deed in favor of WALTER C. ALLAN, Clerk of the District Court, conveying to the said Walter C. Allan, the approximately forty-eight (48) acres of land as described in the pleadings herein as belonging to petitioners, together with all improvements thereon; pay the expense of recording the same, and deliver to the said Walter C. Allan an abstract of title to said premises properly certified and showing merchantable title in them, subject only to the judgment herein rendered.

"Said conveyance to be conditioned that the same shall be security for the judgment in favor of the respondent as the same may be determined under the final judgment, order or decree in these proceedings, whether rendered by the judge of this Court, or by the Supreme Court of the State of Colorado, as follows: * * * "

Petitioners made no objection to this order, in which also was a provision for the sale of the property upon final disposition of this cause and for application of the proceeds of the sale as payment upon the judgment entered. Several motions were presented to the trial court; the pleadings as a whole were voluminous and somewhat

confusing; and we have limited our analysis of the record to that portion thereof which will present fairly the question raised by the specification of points upon which each party relies for reversal of the judgment.

Respondent has filed cross specification of points, asserting that the trial court erred in adjudging that the mechanic's lien statement filed by him was null and void, and in adjudging that it was prematurely filed.

The specification of points upon which petitioners rely for reversal is as follows:

"1. Both the pleadings and the proof establish beyond a troubling doubt that respondent terminated without just cause his alleged contract, and therefore it was reversible error as a matter of law for the trial court to allow respondent to recover on such contract.

"2. It was substantial and prejudicial error warranting reversal for the trial court to summarily adjudge that petitioners take nothing by their counterclaim, without making any findings of fact or conclusions of law to show that such judgment was appropriate.

"3. In any event, Rules 38 and 39, Rules of Civil Procedure, were material in this cause. Therefore it was reversible error for the trial court to disregard the applicable provisions of said rules and try the issues of fact involved in respondent's counterclaim sitting without a jury, because thereby it deprived petitioners of their right to trial by jury, usurped the function of the jury, and deprived petitioners of their right to equality of justice and due process of law under the constitution of this state."

Questions to be Determined.

First: *Must we say from the evidence, as a matter of law, that respondent breached his contract and abandoned construction without just cause?*

■ This question is answered in the negative. There was a sharp conflict in the evidence relating to the terms of the contract under which respondent admittedly furnished labor and material. Upon disputed evidence the

trial court found the contract to be in accordance with respondent's contention. There is ample competent evidence to sustain this finding, and we are without authority to set aside findings of fact which are adequately supported by evidence. Petitioners contend that, since it is admitted that no written statement of any amount due the respondent was ever presented by him prior to the date upon which he stopped the work, he could not recover on his counterclaim because, "he offered no proof that he ever applied for a payment under the contract, and he failed to allege that he had submitted a statement or account of his costs which petitioners had failed to pay." Respondent testified, however, that on August 12th, 1948, he asked petitioners for money and told them the amount that was due; that a second demand for payment was made on September 20, 1948, and the amount due was stated, and that one of the petitioners then said that she didn't have the money but "would negotiate for a loan"; and that a third like demand was made on October 5th, 1948. There was no provision in the contract, upon which respondent relied, which required the presentation of written detailed statements of the cost of labor and materials as a condition precedent to the right of respondent to collect the payments due at stated intervals. Petitioners made no request at any time for such a statement or for any detailed analysis of expenditures made by respondent. It is undisputed that a complete and detailed statement in writing was presented within three days following the cessation of work. The first specification of points is without merit.

Second: *Did the trial court enter findings of fact and conclusions of law sufficient in form to meet the requirements of Rule 52 C(a), Rules of Civil Procedure?*

This question is answered in the affirmative. Rule 52 C(a), R.C.P. Colo., provides, inter alia: "In all actions tried upon the facts without a jury, the court shall find

the facts and state its conclusions of law thereon and direct the entry of the appropriate judgment; * * *."

When the trial court found specifically that the "cost-plus" contract had been made, it necessarily found against the petitioners' claims as set forth in their counterclaim, which was diametrically opposed to respondent's claim. The court's findings were made in detail upon all major issues and were in full compliance with the rule relating thereto.

Third: *Where formal demand for jury trial is made by a party and the cause thereafter proceeds to trial to the court without a jury and there is no objection to such trial by either party, can the unsuccessful party thereafter secure reversal of the judgment entered against him upon the ground that there was no formal disposition of the demand for jury trial in strict compliance with Rule 39(a) R.C.P. Colo.?*

For the reasons hereinafter set forth this question is answered in the negative.

The substance of the argument made in support of an affirmative answer to the question is that, under Rule 38 R.C.P. Colo., when respondent demanded a jury trial it operated to protect petitioners in their right to trial by jury, and the respondent could not withdraw the request without their consent; that Rule 39(a) R.C.P. Colo., sets forth the exclusive methods by which a jury trial can be dispensed with once it has been demanded; that no conduct of the parties other than strict compliance with the formal methods of accomplishing a waiver of jury trial as set forth in said rule can effect such waiver; that if the court proceeds to trial without a jury in a case where a jury has been theretofore demanded, without making formal disposition of the jury demand in some specific manner mentioned in the rule, then the court acts in excess of its jurisdiction and any judgment entered under such circumstances is null and void; and that this result obtains notwithstanding full participation by all the parties in the trial of the issues to the

court without a jury, and notwithstanding the complete absence of any request that a jury be impaneled, or objection of any kind on the part of the litigants to the trial of the issues to the court.

▇▇ Trial by jury in civil actions is not a matter of right in Colorado. *Parker v. Plympton,* 85 Colo. 87, 273 Pac. 1030. In the case cited we held that the code provision, which is supplanted by Rule 39(a) R.C.P. Colo., was not exclusive in providing methods of waiver of jury trials. It is true that the language of the supplanted code provision was substantially different from that used in the present rule. There is a conflict in the authorities as to whether statutory methods of waiver of jury trials are exclusive. In 31 American Jurisprudence, page 590, §44, this conflict is recognized in the following language:

"According to many decisions, modes of waiver of jury trial provided for by statute are to be deemed exclusive, and a court has no right to declare by rule how the right may be waived.

"On the other hand, it has been held that a statutory provision for waiver of right to a jury trial in a certain mode does not preclude waiver of such right in another mode."

Numerous authorities are cited in support of each rule. An examination of such authorities, supplemented by further research, discloses no case decided under statutory provision comparable to the one here under consideration, and no case has been called to our attention, nor have we in our research found any case in which the facts were comparable to those presented in the instant case.

▇▇ We are of the opinion that under the peculiar facts of this case the doctrine of estoppel in pais is applicable and controlling. This doctrine is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result. In 19 American Jurisprudence,

page 640, we find the following statement: "Generally speaking, however, equitable estoppel is a rule of justice which in its proper field prevails over all other rules." The doctrine of equitable estoppel has been invoked to cut off rights or privileges conferred by statute, and constitutional rights may be effectively waived by conduct consisting of action or failure to act. *Munsell v. People,* 122 Colo. 420, 222 P. (2d) 615; *Kalloch v. Elward,* 118 Me. 346, 108 Atl. 256, 8 A.L.R. 750; *Wilson v. Philadelphia School District,* 328 Penn. 225, 195 Atl. 90, 113 A.L.R. 1401. "A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right." *Kalloch v. Elward, supra.*

In the instant case petitioners did not ask, on the day of the trial, that a jury be impaneled; they proceeded to trial before the court, without objection; if they had desired a trial by jury they were under obligation to speak and make known their request to the court, and their objection to going to trial to the court without a jury should have been made known; however, they remained silent. Parties who remain silent when they ought, in the exercise of good faith, to speak, will not be heard to speak when in the exercise of the same good faith they ought to remain silent. *Tone v. Columbus,* 39 Ohio St. 281, 48 Am. R. 438; *Hayward v. National Bank,* 96 U. S. 611, 24 L. Ed. 855. A litigant may not acquiesce in a trial before the court, thereby consenting thereto, and thereafter contend for the first time in the Supreme Court that a jury should have been called. A reviewing court will not examine actions of the trial court unless the latter has had an opportunity to correct any ruling which appellant claims was erroneous. Because of their conduct, petitioners cannot now successfully assert that the trial of the action should have been to a jury.

In basing the determination of this question on grounds of equitable estoppel we are not unmindful of our opinion in *Tiger Placers Co. v. Fisher,* 98 Colo. 221,

54 P. (2d) 891, in which we recognized the rule that the original complaint filed in an action fixes "the nature of the suit, and by what arm of the court it should be tried," and whether either party is entitled to a jury trial even though the cross complaint of the defendant presented issues properly triable to a jury. That case, and others therein cited, was determined under the code of civil procedure. Whether or not the result would be the same under the Rules of Civil Procedure which contains a provision relating to compulsory counterclaims (Rule 13[a]) we do not determine.

Fourth: *Does the asserted error of the trial court, in adjudging that the mechanic's lien statement filed by respondent was null and void, require reversal of that portion of the judgment?*

This question is answered in the negative. Assuming, without so deciding, that the trial court erred in holding that the statement of mechanic's lien was prematurely filed, the error, if any, was without prejudice, since the trial court in granting stays of execution imposed conditions, to which petitioners made no objection, which gave respondent the full protection of any benefit which he could have received from a determination that the mechanic's lien was valid.

The judgment is accordingly affirmed.

Mr. Justice Hilliard dissents.