24CA1452 Peo in Interest of ML 05-29-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA1452
Montrose County District Court No. 22JV30030
Honorable D. Cory Jackson, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of M.L., a Child,

and Concerning S.P.,

Appellant.

_____

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

_____

Martha Phillips Whitmore, County Attorney, Julie R. Andress, Deputy County
Attorney, Montrose, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for
Appellant

¶ 1      In this dependency and neglect action, S.P. (mother) appeals the judgment adjudicating M.L. (the child) dependent and neglected. We affirm.

## I.     Background

¶ 2      The Montrose County Department of Human Services filed a petition in dependency and neglect regarding the then-one-year-old child. Mother's whereabouts were unknown at the time, but she was later located in California and remained there throughout the case.

¶ 3      Mother denied the allegations in the petition and requested an adjudicatory jury trial. However, the juvenile court granted the Department's summary judgment motion and vacated the jury trial. Mother appealed, and a division of this court reversed the adjudication. *People in Interest of M.L.*, (Colo. App. No. 23CA737, Sept. 28, 2023) (not published pursuant to C.A.R. 35(e)).

¶ 4      During the year following her jury trial request, mother failed to personally appear at numerous hearings, though her counsel did. The court eventually found that she had waived her right to a jury trial and held an adjudicatory bench trial. Both mother and

her counsel appeared at the trial, and neither objected to proceeding with a trial to the court rather than a jury trial.

¶ 5     The court adjudicated the child dependent and neglected.

## II.     Analysis

¶ 6     Mother contends that the juvenile court erred by (1) determining that she waived her right to a jury trial and (2) violating her right to a fundamentally fair proceeding.  We address each argument in turn.

## A.     Jury Trial Waiver

¶ 7     Mother first argues that the juvenile court erred by denying her statutory right to an adjudicatory jury trial when she had not voluntarily waived that right.  We discern no basis for reversal.

## 1.     Additional Background

¶ 8     Mother personally appeared at two hearings early in the case, at one of which she denied the allegations in the petition and requested a jury trial.  She then failed to appear at eight consecutive hearings, including some occurring during the pendency of the first appeal.  Throughout this period, her counsel appeared at the hearings and repeatedly indicated that he had no representations to make on mother's behalf.

¶ 9    Following the mandate in the first appeal, a year into the case, mother continued not appearing in court. Her counsel reported that he did not know her "position . . . in terms of moving forward." So the court set another hearing a month later to discern from mother her position on adjudication and ordered her to at least call in or otherwise appear remotely at the hearing.

¶ 10    Mother again did not appear, and her counsel reported that he had no representations to make on her behalf. When the court stated that it would like to set the case for a bench trial, her counsel noted, "I guess my only concern just for the record is that she did previously request a jury trial. I understand the court's position. I guess I would just put that out there, but I'm not entirely sure what to do." Then, the court found that mother had waived her right to a jury trial and scheduled a bench trial:

> At this point she's failed to appear for several hearings and we just don't have any good information. And I think that the case law . . . talk[s] about a party who fails to appear at trial and a potential waiver of a jury trial. And I think that the purpose for setting today's hearing was really to ascertain what [mother's] preference was. And we discussed that at our last hearing and the hope was that she would appear and express a preference. So at this point I do find that she's waived her right to a

> jury trial based on her failure to appear and otherwise indicate at this hearing what she wanted to do. And I think that is consistent with just our difficulty getting in touch with her since the appeal went up. So I am going to schedule a Court trial . . . .

Mother's counsel did not object to the court's finding of waiver at this or any later appearances (nor did mother when she appeared at subsequent proceedings).

¶ 11 The next month, mother appeared at a status conference, and the court warned her it was "critical" that she appear at the scheduling conference the next day so she could inform the court of her availability for the trial. But she did not appear the next day. Noting that the delays were causing a "really untenable" situation, the court set another date for the bench trial.

¶ 12 Mother did not initially appear at the adjudicatory bench trial. Her counsel acknowledged that he was "still in a tough spot," but confirmed that he could still ethically represent her. Mother later joined the proceedings during the caseworker's direct examination. Mother and her attorney participated in the trial without objecting to the lack of a jury.

### 2. Mother Waived Her Right to a Jury Trial

¶ 13    Citing C.R.C.P. 39(a), mother first contends that the juvenile court erroneously found that she waived her right to a jury trial.

¶ 14    A parent has a statutory right to demand a jury trial at the adjudicatory hearing.  § 19-3-202(2), C.R.S. 2024; *People in Interest of C.C.*, 2022 COA 81, ¶ 11; *see* C.R.C.P. 39(a) (providing, as relevant here, that the trial shall be by jury so demanded unless the requesting parties waive in writing or "all parties demanding trial by jury fail to appear at trial").[1]  However, a parent may waive the right to a jury trial as long as the waiver is voluntary.  *People in Interest of K.J.B.*, 2014 COA 168, ¶ 29; *see also C.C.*, ¶ 17 ("[T]he right to a jury trial 'may be lost only for the reasons listed in C.R.C.P. 39(a).'" (quoting *Wright v. Woller*, 976 P.2d 902, 903 (Colo. App. 1999))).

---

[1] In April 2025, our supreme court adopted new Colorado Rules of Juvenile Procedure that will apply to all cases filed on or after July 1, 2025.  Rule Change 2025(10), Colorado Rules of Juvenile Procedure (Amended and Adopted by the Court En Banc, Apr. 21, 2025), https://perma.cc/6FC6-5S75.  As relevant here, C.R.J.P. 4.21 specifies how a respondent parent may invoke or waive the right to an adjudicatory trial.  *Id.*  Thus, although C.R.C.P. 39 applies in this case, it will not apply in cases filed on or after July 1, 2025.

"Such a waiver may be either express or implied." *People in Interest of N.G.*, 2012 COA 131, ¶ 51.

¶ 15    In civil proceedings, such as dependency and neglect cases, a party who demands a jury but fails to make any objection when the case is tried without a jury waives the jury demand. *See MacGregor v. Porter*, 354 P.2d 489, 489-90 (Colo. 1960); *Johnson v. Neel*, 229 P.2d 939, 944-45 (Colo. 1951). "[H]aving proceeded without objection to trial to the court without a jury, [mother] cannot, after adverse judgment at the hands of the court, claim error based upon the fact that no jury was impaneled. Her right to a jury trial was waived." *MacGregor*, 354 P.2d at 489.

¶ 16    That is the case here. Neither mother nor her counsel ever asserted that mother wanted a jury trial for the adjudication following remand. To the contrary, at the hearing where the court found a jury trial waiver, her counsel told the court that he had no representations to make on her behalf. And neither mother nor her counsel objected to that finding at any hearings following the finding or at the bench trial itself. And neither later asserted the right. Crucially, mother and her counsel appeared (mother albeit late) and participated in the bench trial without objecting to the

6

trial being held in front of the court rather than the jury. Under these circumstances, we conclude that mother waived her statutory right to a jury and has not preserved a claim of "error based upon the fact that no jury was impaneled." *Id.*; *see Johnson*, 229 P.2d at 944-45.

¶ 17 To the extent mother contends that the court, in contravention of *People in Interest of J.R.M.*, 2023 COA 81, ¶¶ 17, 20, erroneously based its finding of waiver on her failure to appear at a pretrial conference or struck a jury trial as a sanction for failure to comply with court rulings, we again disagree.

¶ 18 As mentioned above, mother was absent for numerous appearances and disengaged from this case for a year. Practically speaking, no one — including her own attorney — knew how she would like to proceed on the issue of adjudication after remand. While her attorney noted his "concern just for the record" that she requested a jury trial before the appeal, he admittedly was "just put[ting] that out there" and was "not entirely sure what to do." In short, nothing in the record indicates that the court converted the trial solely because of mother's failure to attend a pretrial

conference or to sanction her for failure to comply with a court ruling.

¶ 19     In any event, we conclude that mother waived her claim of error here because she and her counsel participated in the bench trial without objection to the lack of a jury. *MacGregor*, 354 P.2d at 489; *see Johnson*, 229 P.2d at 944-45.

## B.     Procedural Due Process

¶ 20     Mother next contends that she was denied her due process right to a fundamentally fair proceeding because the Department introduced, and the court relied on, evidence of her post-trial incarceration, though it was not alleged in the amended petition. Specifically, mother argues that her due process rights were violated because (1) she was not notified through an amended petition of her own undisputed incarceration and (2) the court relied on that evidence. Mother also impliedly argues that the court essentially delayed ruling on adjudication to find a reason upon which to base the adjudication that was neither pled nor tried during the trial.

### 1. Preservation

¶ 21　Mother raises her due process claim for the first time on appeal. Generally, in dependency and neglect cases, only issues raised in the juvenile court can be considered on appeal. *People in Interest of C.E.*, 923 P.2d 383, 385 (Colo. App. 1996). But an appellate court may exercise its discretion and address an unpreserved issue. *See People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996). Divisions of this court have done so when, for example, the issue concerned an alleged violation of fundamental constitutional rights. *See, e.g.*, *C.E.*, 923 P.2d at 384-85. However, we generally review such issues in dependency and neglect cases only when doing so may prevent a miscarriage of justice. *People in Interest of M.B.*, 2020 COA 13, ¶ 20. That standard is not satisfied here.

### 2. Additional Background

¶ 22　Following the reversal of the first adjudication, the Department filed an amended petition, alleging that mother had limited contact with the child (1) in the period preceding the filing of the initial petition and could not be located at the time of his removal and (2) for several months during the case and had abandoned him.

¶ 23    During the bench trial, the court heard the caseworker's and mother's testimony and closing arguments. While not authorized by the court, mother's counsel then filed a written supplemental closing argument. The court in turn ordered the parties to file supplemental briefs on multiple issues.

¶ 24    After briefing was complete, the Department notified the court that mother had been arrested on felony charges and was incarcerated in California. The court ordered that the evidence be reopened to consider mother's incarceration as it pertained to the pending issue of adjudication. The court ordered the parties to file status reports indicating whether the fact of her incarceration was in dispute, including any requests for a hearing to establish or disprove that fact. Only the Department responded with a status report and a caseworker's affidavit attesting that mother was facing felony charges and incarcerated in California.

¶ 25    Four months after the bench trial, the court issued a written ruling adjudicating the child dependent and neglected under section 19-3-102(1)(b) and (c), C.R.S. 2024. The court based its ruling on the admissible evidence introduced at the trial as well as mother's inability to parent because she was in custody. The court

found that mother did not dispute the evidence of her incarceration and noted that it is a fact that "appears appropriate for judicial notice pursuant to CRE 201."

### 3. Reviewing Mother's Unpreserved Due Process Claim Would Not Avert a Miscarriage of Justice

¶ 26 Mother does not articulate on appeal how she was prejudiced by the court considering her incarceration under these facts, *see People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007), and we do not perceive that she was. The juvenile court's finding that she was in custody and thus unable to provide parenting for the child was not the sole basis for the adjudication. The court also credited the caseworker's unrefuted opinions that mother was unable to care for the child or provide him with a safe living environment for the child. And the court found, based on the caseworker's and mother's testimony, that mother had an "extremely limited relationship with the child" and had not had in-person contact with him in a "stunningly long time." Mother had not been to Colorado for any in-person family time during the year the case was open, her video visits were limited, and she had no video visits with the child during the five months preceding the

11

hearing. Further, the caseworker testified that the Department's concerns about such lack of involvement with the child had existed since the case was opened. Finally, the court found that mother was not credible on certain issues such as her ability to care for the child, the suitability of her home, and the reasons she missed visits.

¶ 27 Thus, mother's incarceration was not the sole — or even primary — ground for the adjudication. And because mother does not demonstrate prejudice from any alleged error in considering her incarceration, we cannot conclude that reviewing her unpreserved due process challenges would avert a miscarriage of justice. *See M.B.*, ¶ 20.

## III. Disposition

¶ 28 The judgment is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.